930 P.2d 544

CARONDELET HEALTH SERVICES, dba St. Joseph's Hospital–Tucson and St. Mary's Hospital, Plaintiffs–Appellants,

v.

ARIZONA HEALTH CARE COST CONTAINMENT SYSTEM ADMINISTRATION, an agency of the State of Arizona; and Dr. Leonard Kirschner, in his capacity as Director, Defendants–Appellees.

No. 1 CA–CV 94–0092.

Court of Appeals of Arizona, Division 1, Department E.

Dec. 5, 1996.

Gammage & Burnham, P.L.C. by Richard B. Burnham and Cameron C. Artigue, Phoenix, for Plaintiffs–Appellants.

Johnston Maynard Grant & Parker by Catherine M. Dodd, Phoenix, for Defendants–Appellees.

## OPINION

WEISBERG, Judge.

Carondelet Health Services ("plaintiff") appeals the superior court's affirmance of the Arizona Health Care Cost Containment System Administration ("AHCCCS") Director's

decision to deny its grievance. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1990, a Native American ("F.L.") residing on the Tohono O'odham Reservation sought treatment at Sells Indian Hospital ("Sells"), a federally-funded Indian Health Service ("IHS") facility located on the reservation. He was diagnosed as suffering from spinal cord suppression and was "essentially paraplegic." On May 25, 1990, F.L. was transferred from Sells to St. Mary's Hospital and Health Center ("St.Mary's"). When F.L. was admitted, St. Mary's contacted AHCCCS and was informed that F.L. was AHCCCS-eligible, being enrolled in "AHCCCS/IHS."

On June 7, St. Mary's and F.L.'s treating physician were notified that F.L. would not require hospitalization at an acute care facility, such as St. Mary's, beyond June 11. Lee Stough, St. Mary's' AHCCCS billing clerk, claims that, on June 8, someone at AHCCCS named "Jennie" told her that "State AHCCCS wants to work something out with Sells."

On June 11, F.L. was receiving ongoing intravenous penicillin treatments and required placement in a nursing home for at least two weeks. St. Mary's had made efforts to arrange for F.L.'s transfer to such a facility. St. Mary's first attempted to place F.L. with the Holy Family Convalescent Center in Tucson, which declined to accept F.L. because he had a staphylococcus infection that would pose a risk to its other patients. St. Mary's then focused its efforts on a transfer back to Sells, which eventually took place on June 13.

AHCCCS reimbursed St. Mary's for F.L.'s medical care for the period between May 25 and June 10. AHCCCS refused, however, to pay for the services rendered to F.L. from June 11 through June 13 because such services were at a higher level of care than was medically necessary.

On March 21, 1990, plaintiff initiated a grievance with AHCCCS to obtain payment for the disputed three-day period. The Director denied the grievance and plaintiff appealed. A hearing was held on September 1, 1992, before an AHCCCS hearing officer who concluded that AHCCCS was estopped from declining payment and recommended a reversal of the initial denial of the grievance. The AHCCCS Director (the "Director"), however, affirmed the denial, concluding first that there was insufficient evidence to support plaintiff's estoppel claim, and second that it had been either St. Mary's' or IHS' responsibility to arrange F.L.'s transfer, but not AHCCCS'. Plaintiff filed a petition for rehearing, which the Director denied, issuing his final decision on March 1, 1993.

Plaintiff then filed a complaint in the superior court, pursuant to the Administrative Review Act.[1] The superior court affirmed, agreeing with the rationale of the Director. Plaintiff has filed a timely notice of appeal to this court.

## STANDARD OF REVIEW

 When reviewing the decision of an administrative agency, this court must accept the agency's findings of fact unless they are arbitrary, capricious, or an abuse of discretion. *Eshelman v. Blubaum*, 114 Ariz. 376, 378, 560 P.2d 1283, 1285 (App.1977). We therefore determine only whether those findings are supported by substantial evidence. *Sigmen v. Arizona Dep't of Real Estate*, 169 Ariz. 383, 386, 819 P.2d 969, 972 (App.1991). We are free, though, to draw our own legal conclusions and determine whether the agency erred in its interpretation of the law. *Eshelman*, 114 Ariz. at 378, 560 P.2d at 1285. We thus may substitute our judgment for the agency's regarding the legal effect of its findings of fact. *Sanders v. Novick*, 151 Ariz. 606, 608, 729 P.2d 960, 962 (App.1986).

## DISCUSSION

### 1. *Estoppel*

 Plaintiff first argues that AHCCCS is estopped from denying responsibility for transferring F.L. because AHCCCS had indicated that F.L. was enrolled with AHCCCS/

---

1. Arizona Rev. Stat. Ann. ("A.R.S.") §§ 12–901 to –914.

IHS and was itself attempting to arrange a transfer to Sells. "A claim for estoppel arises when one by his acts, representations or admissions intentionally or through culpable negligence induces another to believe and have confidence in certain material facts and the other justifiably relies and acts on such belief causing him injury or prejudice." *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.,* 154 Ariz. 307, 317, 742 P.2d 808, 818 (1987); *see also Heltzel v. Mecham Pontiac,* 152 Ariz. 58, 61, 730 P.2d 235, 238 (1986). Reliance is justified when it is reasonable, *Graham v. Asbury,* 112 Ariz. 184, 186, 540 P.2d 656, 658 (1975), but is not justified when knowledge to the contrary exists, *LyphoMed, Inc. v. Superior Court,* 172 Ariz. 423, 430, 837 P.2d 1158, 1165 (App.1992).

■ The hearing officer concluded that AHCCCS was estopped from denying payment, basing this conclusion on Stough's statement that someone at AHCCCS named "Jennie" told her that "State AHCCCS wants to work something out with Sells." The hearing officer decided that, based upon this statement, plaintiff justifiably relied upon AHCCCS to effectuate the transfer. The Director disagreed, citing the testimony of Jennie Rich which rebutted Stough's testimony, and found that plaintiff had not demonstrated by a preponderance of the evidence that AHCCCS had affirmatively misled it. The Director also concluded that the evidence could not support justifiable reliance on plaintiff's part. We agree that the Director's decision is supported by substantial evidence.

Jennie Rich, the only AHCCCS employee named "Jennie," testified that she did not remember ever having talked with Stough; had never been involved in arranging a transfer of a patient to another facility; had no knowledge that AHCCCS had ever done so; and that she would not have stated that AHCCCS wanted to work something out with Sells. Moreover, Dorothy Martin, the St. Mary's' employee who was involved in arranging the transfer, testified that she was told by an employee at Sells that the transfer had to be arranged "doctor-to-doctor." Martin also testified that she had never known AHCCCS to effectuate a transfer. In addition, Linda Krater, an AHCCCS utilization review analyst, testified that AHCCCS does not participate in the transfer of patients in a fee-for-service setting, which would include IHS patients such as F.L. We conclude that this evidence was sufficient to support the Director's finding that AHCCCS did not mislead plaintiff into believing that it would arrange the transfer. Consequently, AHCCCS was not estopped from denying plaintiff's claim for reimbursement. Moreover, even if the Director had accepted Stough's testimony, it would not have been error for him to conclude that the record does not support a finding of justifiable reliance. The only conduct supporting plaintiff's estoppel argument is the alleged statement by "Jennie" that "State AHCCCS wants to work something out with Sells." Plaintiff was not told that AHCCCS was assuming responsibility for the transfer, or that it was even trying to arrange a transfer. Furthermore, the St. Mary's' employee involved in the transfer testified that she had never known AHCCCS to effectuate a transfer. Under these circumstances, it would not have been reasonable for plaintiff to rely upon Jennie's single statement.

■ Plaintiff also argues that it was denied due process when the Director "overruled" and "reversed" the hearing officer without any analysis or explanation. Plaintiff is apparently referring to the Director's decision dated January 27, 1993, in which the Director simply stated that "the evidence adduced at the hearing does not support a claim of equitable estoppel." Plaintiff, however, ignores the Director's final decision dated March 1, 1993, in which the Director offered explanations for his decision.

■ Plaintiff further argues that the Director entered his decision without reviewing the record developed at the hearing. In so arguing, plaintiff overlooks that both the January 27, 1993 decision and the March 1, 1993 final decision state they were made "in consideration of the record in the above matter." Moreover, the Director's review of the record is implicit in his conclusion that the evidence did not support equitable estoppel and, specifically, his conclusion that AHCCCS' witnesses on the estoppel issue adequately re-

butted the testimony of plaintiff's witness on that same issue.[2]

This case is thus distinguishable from *Stoffel v. Arizona Dep't of Econ. Security*, 162 Ariz. 449, 784 P.2d 275 (App.1989), cited by plaintiff. In *Stoffel*, this court addressed the following issue: "May an administrative board delegate to a hearing officer the responsibility of taking evidence and then rely upon an oral recitation of what that evidence consisted in making its own factual determinations?" *Id.* at 450, 784 P.2d at 276. In *Stoffel*, the Appeals Board ("the Board") of the Department of Economic Security permitted a hearing officer to take evidence and then give an oral summary of that evidence to it upon which the Board based its decision. The Board's procedure did not require it to actually review a transcript or tape of the hearing. Because there was no indication that the Board reviewed the actual evidence in the case, this court found a violation of due process:

> [I]f the Board chooses to delegate fact finding to a hearing officer, that officer should be given the responsibility and power to evaluate the evidence for the purpose of making a decision. Accordingly, the hearing officer should not only hear the evidence, but make appropriate findings of fact. If however, the Board reserves to itself the initial responsibility for making findings of fact and conclusions of law, the members of the Board must independently review the evidence. Fairness requires that it not rely on the hearing officer's rendition of what transpired.

*Id.* at 451, 784 P.2d at 277 (footnote omitted).

In the instant case, though, the record indicates that the Director did review and consider the record. In addition, although the AHCCCS regulations permit the hearing officer to make findings of fact, conclusions of law, and a recommended decision, Ariz. Admin. Code ("A.A.C.") R9–22–804(D), the Director maintains the ultimate responsibility for rendering the final decision, "which shall include findings of fact and conclusions of law." A.A.C. R9–22–804(E)(1). Plaintiff

cites no authority indicating that the Director is bound by the hearing officer's findings of fact and conclusions of law. *Cf. Ference v. Kirschner*, 176 Ariz. 530, 532, 862 P.2d 903, 905 (App.1993) (discussing AHCCCS procedure for hearing eligibility grievances under A.A.C. R9–22–801, which contains almost identical language to A.A.C. R9–22–804, and finding that "the hearing officer's written findings of fact and conclusions of law regarding eligibility are only a recommendation to the Director.").

Plaintiff also misplaces its reliance upon *Ohlmaier v. Industrial Comm'n*, 161 Ariz. 113, 776 P.2d 791 (1989). In *Ohlmaier* our supreme court held that a workers' compensation claimant was denied due process when three administrative law judges ("ALJs") heard separate parts of the testimony, with only one making the final determination. *Ohlmaier*, however, is distinguishable from the instant case because the workers' compensation statutes create the position of ALJ as the judicial officer empowered both to preside over the evidentiary hearing and to make the ultimate determination. *See* A.R.S. §§ 23–941 to 943; *Ohlmaier*, 161 Ariz. at 116, 776 P.2d at 794. By contrast, the AHCCCS statutes merely require that the Director render the final decision in the grievance process. *See* A.R.S. § 36–2903.01(B)(4). Thus, nothing prevents the Director from delegating to a hearing officer the responsibility to hear evidence, provided the Director either reviews the record or permits the hearing officer to make the findings of fact. *See Stoffel*, 162 Ariz. at 451, 784 P.2d at 277.

In any event, plaintiff here expressly refrains from contesting the process whereby the Director delegates to the hearing officer the responsibility to take evidence and make recommended findings and conclusions. Plaintiff only argues that the Director must independently review the evidence and enunciate his reasons for reaching different findings and conclusions. Since he did so in rendering his final decision, we conclude that the Director's determination that estoppel

---

2. At oral argument, plaintiff's counsel pointed out that the transcript of the hearing was not prepared until after the Director had filed his decision. Plaintiff conceded, however, that audiotapes of the hearing existed and were available to the Director.

does not apply was not arbitrary, capricious, or an abuse of discretion.

### 2. AHCCCS Did Not Have the Responsibilities of a "Contractor"

■ Plaintiff next argues that, even if AHCCCS is not estopped from denying payment, it nevertheless is responsible for arranging F.L.'s transfer under the AHCCCS regulations. *See* A.A.C. R9–22. Plaintiff reasons that either F.L. was not enrolled with a contractor, or was enrolled with AHCCCS/IHS as his contractor, and that in either case AHCCCS is responsible for providing the transfer services normally provided by a contractor.[3]

AHCCCS responds that it does not operate as a contractor, and that Native Americans are treated differently under its system because federal statutes and regulations require IHS to assume responsibility for Native American health care. *See* 25 U.S.C. § 13; 42 C.F.R. §§ 36.10 to 36.16. It concludes, as do we, that either St. Mary's or IHS was responsible for arranging F.L.'s transfer.

The primary AHCCCS regulations dealing with Native Americans and IHS are A.A.C. R9–22–706(H) and R9–22–708. A.A.C. R9–22–706(H) provides:

> Indian Health Service. The maximum allowable rates paid to IHS for AHCCCS-covered services provided in IHS facilities shall be the same as the all-inclusive inpatient, outpatient, or ambulatory surgery rates published in the Federal Register. Except as provided in R9–22–708, IHS medical service referrals for eligible Native Americans made to off-reservation contractors, providers, noncontracting providers or nonproviders shall be prior authorized.

A.A.C. R9–22–708, titled "Payment for services provided to eligible Native Americans residing on reservation," provides:

A. Categorically eligible Native Americans may enroll with a contractor in accordance with Article 3 of these rules.

B. Categorically eligible Native Americans who do not select an AHCCCS contractor and indigent and medically needy Native Americans shall be assigned in accordance with Article 3 of these rules.

C. Providers and nonproviders shall comply with prior authorization requirements of the Administration, as set forth in Article 2 of these rules, and of contractors.

D. Contractors other than the Indian Health Service providing care to eligible Native Americans shall be reimbursed on a capitation basis.

E. Once a Native American has enrolled with a contractor, no referral care rendered after the date of enrollment shall be reimbursable by a contractor unless the care is rendered pursuant to a referral or prior authorization made by the contractor of record.

The regulations thus permit Native Americans, like all other AHCCCS-eligible individuals, to enroll with a contractor. *See* A.A.C. R9–22–708(A). Alternatively, Native Americans may opt to have their health services provided through IHS. *See* 25 U.S.C. § 13; 42 C.F.R. §§ 36.10 to 36.16; A.A.C. R9–22–708. While IHS does not meet the technical definition of a contractor because it has not entered into a contract with AHCCCS, *see* A.A.C. R9–22–101(23), the AHCCCS regulations appear to consider IHS as an entity that performs a function analogous to that of a contractor. For example, A.A.C. R9–22–708(D) refers to "[c]ontractors other than the Indian Health Service." Also, A.A.C. R9–22–1203(B), dealing with the provision of mental health services, refers to "eligible persons who are enrolled in the Indian Health Service."[4] As plaintiff itself argues,

---

3. A contractor is an entity contracting with AHCCCS to provide medical services to AHCCCS-eligible individuals. *See* A.A.C. R9–22–101(23). The set of services provided is generally referred to as the contractor's "plan," which must conform to the requirements established in the AHCCCS regulations.

4. The full text of A.A.C. R9–22–1203(B) reads:

> [The Arizona Department of Health Services], jointly with [AHCCCS], may contract with federally recognized tribal governments for the provision of mental health services to eligible persons. In the absence of such con-

"enrollment" is a term of art, defined as "the process by which a person who has been determined eligible becomes a member of a contractor's plan under AHCCCS." A.A.C. R9–22–101(46). Finally, plaintiff has referred us to nothing in the regulations that would suggest that IHS does not provide coordinating services similar to those ordinarily provided by contractors.[5]

Plaintiff nevertheless relies upon the alleged statement that F.L. was enrolled in an "AHCCCS/IHS" plan. It argues that, because "AHCCCS/IHS" was F.L.'s plan, AHCCCS must be responsible for arranging his transfer as part of its duty as a contractor. Plaintiff, however, does not explain why AHCCCS, rather than IHS, should be the responsible entity in this situation. Plaintiff has cited nothing in the statutes, regulations, or case-law indicating that AHCCCS ever acts as a contractor.[6] In fact, plaintiff ignores the testimony of its own employees: for example, Dorothy Martin, St. Mary's' social work coordinator, who testified that she expected IHS to arrange F.L.'s transfer and had never known AHCCCS to effectuate a transfer itself. Accordingly, we conclude that AHCCCS did not have the responsibility to arrange F.L.'s transfer to Sells, and is therefore not required to reimburse plaintiff for the disputed services.

### 3. *Equal Protection*

■ Plaintiff finally argues that not requiring AHCCCS to provide normal contractor services to Native Americans would violate equal protection. Plaintiff reasons that categorically eligible Native Americans would then be denied the same services that categorically eligible non-Native Americans receive under AHCCCS. AHCCCS responds that plaintiff does not have standing to raise an equal protection claim on behalf of Native Americans. We will assume *arguendo*, however, that plaintiff has standing and deal with this issue on the merits.

As discussed above, A.A.C. R9–22–708(A) provides that categorically eligible Native Americans, like all other categorically eligible individuals, may enroll with a contractor. Thus, Native Americans have the option of enrolling with any contractor in their geographic area, and are therefore entitled to the same services that such contractors provide to all their enrollees.

Native Americans are thus afforded equal benefits under AHCCCS. We therefore reject plaintiff's equal protection argument.

### CONCLUSION

The Director did not err in his decision holding that AHCCCS was neither estopped from denying plaintiff's claim for reimbursement nor responsible for arranging F.L.'s transfer to a less-skilled facility. Furthermore, the Director's decision does not violate equal protection. We therefore affirm, and deny plaintiff's request for attorney's fees and costs.

GRANT, P.J., and PATTERSON, J., concur.

---

tracts eligible persons who are enrolled in the Indian Health Service (IHS) may receive on-reservation mental health services through the IHS or the eligible person may be referred off-reservation to the RBHA which is responsible for provision of covered mental health services off-reservation.

5. The primary difference between IHS and other plans is that AHCCCS reimburses IHS on a fee-for-service basis rather than a capitation basis.

A.A.C. R9–22–708(D). Plaintiff, however, has not shown how this affects the services provided.

6. We note that AHCCCS argues that *either* IHS *or* St. Mary's is responsible for arranging F.L.'s transfer. Because only the issue of AHCCCS' responsibility is before this court, we do not address the issue of St. Mary's responsibility vis-a-vis IHS.