51 P.3d 972

James HIGGINBOTTOM and Elaine
Jordan, husband and wife,
Plaintiffs–Appellants,

v.

STATE of Arizona, a political body;  Jane
Dee Hull, in her official capacity as Gov-
ernor of the State of Arizona, Defen-
dants–Appellees.

No. 1 CA–CV 01–0520.

Court of Appeals of Arizona,
Division 1, Department A.

Aug. 8, 2002.

**140**

Paul F. Lazarus, P.C. By Paul F. Lazarus, Phoenix, for Appellants.

Janet Napolitano, Attorney General By Thomas A. McGuire, Assistant Attorney General, Phoenix, Attorneys for Appellees.

### OPINION

HALL, Judge.

¶ 1 After Governor Jane Dee Hull terminated James Higginbottom's appointment as Director of the Arizona Department of Racing, he and his wife sued the State of Arizona and Governor Hull for breach of contract, wrongful termination, and promissory estoppel. Reasoning that the director holds his or her position at the pleasure of the governor, the trial court granted defendants' motion for summary judgment. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 The Director of the Arizona Department of Racing is appointed by the governor pursuant to Arizona Revised Statutes ("A.R.S.") section 5–101.01(B) (1997), which provides in relevant part: "The governor shall appoint a director of the department [of racing] pursuant to § 38–211," and "[t]he director serves at the pleasure of the gover-

nor for a term of five years." [1] Governor J. Fife Symington III appointed Higginbottom as Director of the Department of Racing for a five-year term, beginning June 25, 1993. Higginbottom remained in the position following the expiration of his five-year term.

¶ 3 On December 1, 1998, Governor Hull reappointed Higginbottom as director for a term beginning retroactively on June 25, 1998, and ending on June 25, 2003. Higginbottom and the Governor's representative, J. Elliot Hibbs, signed the appointment form entitled "Appointment by Governor [to] Position Having a Fixed Term" which set forth the terms of Higginbottom's appointment. See Appendix, attached hereto. According to the written agreement, Higginbottom received an initial salary of $75,000 with adjustments to be allowed for position regrades, general increases provided to all state employees, and merit-based increases. He received the same benefits provided to covered state employees, with the exception of a higher rate of annual leave accrual.

¶ 4 When Higginbottom sought a merit-based salary increase, he was told that his appointment was for a fixed term that made him ineligible for merit-based increases.[2] He subsequently received a letter from State Human Resources Director James B. Matthews informing him that the Attorney General's Office had determined that pursuant to statute his position was at-will, making him eligible for merit-based increases. Matthews explained that the Director of the Department of Racing serves at the pleasure of the governor for a term of five years, and thus has an "at-will" appointment. Matthews also noted that Higginbottom's most recent appointment agreement included a provision for salary adjustments.

¶ 5 Higginbottom wrote to Matthews, thanking him for finding time "to help clarify, to others as well as myself [sic], that my position is not actually that of a person serving a fixed term." Higginbottom continued, "I have never been able to convince myself

that 'serving at the pleasure of the Governor' meant anything but what it says." He also wrote that he had no doubt that his appointment agreement meant that adjustments to his salary were allowed for position regrades, general increases, and merit-based increases.

¶ 6 On September 8, 2000, Governor Hull terminated Higginbottom's appointment. Higginbottom and his wife sued the State and Governor Hull for breach of contract, wrongful termination, and promissory estoppel. The defendants filed a motion for summary judgment, arguing that Higginbottom's five-year term could be terminated "at the pleasure of the governor" pursuant to § 5–101.01(B). They also asserted that the Employment Protection Act, A.R.S. §§ 23–1501 and—1502 (Supp.2001), prevented Higginbottom from bringing a wrongful discharge action separate and apart from his breach of contract claim. Finally, defendants argued that Higginbottom could not use the doctrine of promissory estoppel to overcome his at-will employment status because he had acknowledged in writing that he knew ·he served at the pleasure of the governor.

¶ 7 The trial court granted the defendants' motion. It found that, pursuant to § 5–101.01(B), Higginbottom served at the pleasure of the governor for a term not to exceed five years but that a five-year term of employment was not guaranteed. Higginbottom and his wife timely appealed from the judgment in favor of the State and Governor Hull.

## ANALYSIS

¶ 8 On appeal, plaintiffs argue that the appointment agreement contains the necessary elements to make it a binding contract. They further assert that the parties intended the term of the appointment to be five years and that the trial court should not have looked to § 5–101.01 or Higginbottom's letter to Matthews to interpret the nature and duration of Higginbottom's appointment. Finally, plaintiffs argue that defendants should

---

1. Pursuant to A.R.S. § 38–211(A) (1989), the governor's chosen appointee is subject to senate confirmation.

2. Under Article 4, Part 2, Section 17 of the Arizona Constitution, the compensation of a public officer, other than a justice of the peace, may not be increased or diminished during the officer's term of office.

be estopped from denying them the benefits of the appointment agreement because Higginbottom relied on it to his detriment.

■ ¶ 9 Because this appeal is from an order granting summary judgment, "we consider the evidence in the light most favorable to the party opposing summary judgment." *HCZ Constr. Inc. v. First Franklin Fin. Corp.*, 199 Ariz. 361, 363, ¶ 7, 18 P.3d 155, 157 (App.2001). We must determine whether a genuine issue of disputed material fact exists, and if not, "whether the trial court correctly applied the substantive law." *Id.* To the extent that this appeal involves the interpretation of statutes, we are not bound by the trial court's conclusions of law, and we review de novo the statutes at issue. *Blum v. State*, 171 Ariz. 201, 204, 829 P.2d 1247, 1250 (App. 1992).

¶ 10 Contrary to plaintiffs' argument, the trial court did not focus on whether the appointment agreement comprised a complete contract. Rather, the court determined that in light of § 5–101.01(B), Higginbottom's appointment was at the pleasure of the governor for a term not to exceed five years. Plaintiffs argue that the trial court's use of the statute to reach this conclusion violates the parol evidence rule because the statute contradicts and varies the terms of the appointment agreement. They assert that inasmuch as the appointment agreement did not refer to § 5–101.01, § 5–101.01 cannot be used to interpret the agreement.

■ ¶ 11 We disagree. It has long been the rule in Arizona that a valid statute is automatically part of any contract affected by it, even if the statute is not specifically mentioned in the contract. *See, e.g., Yeazell v. Copins*, 98 Ariz. 109, 113, 402 P.2d 541, 544 (1965); *Lee Moor Contracting Co. v. Hardwicke*, 56 Ariz. 149, 156, 106 P.2d 332, 335 (1940); *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 389, 807 P.2d 1119, 1125 (App.1990). Regardless of the language of a contract, "it is always to be construed in the light of the statute, of the law then in force." *McCullough v. Commonwealth of Virginia*, 172 U.S. 102, 112, 19 S.Ct. 134, 43 L.Ed. 382 (1898), *quoted in Roberts v. Spray*, 71 Ariz. 60, 70, 223 P.2d 808, 815 (1950). Thus,

"where a contract is incompatible with a statute, the statute governs." *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 402, 678 P.2d 977, 983 (App.1984). In particular, a public entity created by the legislature is bound by the laws relating to it. *See Bower v. Ariz. State Sch. for the Deaf and the Blind*, 146 Ariz. 168, 169, 704 P.2d 809, 810 (App.1984).

■ ¶ 12 The parol evidence rule prohibits the use of extrinsic evidence to vary or contradict a written contract. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993). Here, however, evidence of § 5–101.01(B) as it relates to Higginbottom's appointment agreement is not extrinsic because the statute is part of the parties' contract. Therefore, consideration of the effect of § 5–101.01(B) on the agreement at issue does not violate the parol evidence rule. *See Reidy v. Blackwell*, 140 Ariz. 333, 335, 681 P.2d 916, 918 (App. 1983) (rejecting as "totally devoid of merit" contention that parol evidence rule prohibits use of contractor licensing statute as defense to claim for failure to pay wages pursuant to an employment contract).

■ ¶ 13 Before we can apply § 5–101.01(B) to the agreement, we must first determine its meaning. Our task "is to fulfill the intent of the legislature that wrote it." *State v. Williams*, 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993). "If a statute is clear and unambiguous, we generally apply it without using other means of construction." *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 330, ¶ 12, 26 P.3d 510, 513 (2001). A statute "is ambiguous only when well-informed persons may reasonably disagree as to its meaning." 2A Norman J. Singer, *Statutes and Statutory Construction* § 45.02, at 17 (6th ed. rev.2000). When interpreting a statute, "we must read the statute as a whole and give meaningful operation to each of its provisions." *Ruiz v. Hull*, 191 Ariz. 441, 450, ¶ 35, 957 P.2d 984, 993 (1998).

■ ¶ 14 We believe that the language in § 5–101.01(B) that the Director of the Department of Racing "serves at the pleasure of the governor for a term of five

years" is neither unclear nor ambiguous. The common understanding of the phrase "serves at the pleasure of the governor" is that the governor can terminate the employee without good cause. *See McLeod v. Chilton,* 132 Ariz. 9, 16, 643 P.2d 712, 719 (App.1981) (The phrase "serving at the pleasure of the appointing authority" means that the employee "is by the terms of his employment subject to removal without judicially cognizable good cause.") (quoting *Bogacki v. Bd. of Supervisors of Riverside County,* 5 Cal.3d 771, 97 Cal.Rptr. 657, 489 P.2d 537, 545 (1971)). Although employment "for a term of five years" would, by itself, ordinarily signify a period of service "that is fixed in time," *Buckalew v. Holloway,* 604 P.2d 240, 243–44 (Alaska 1979), any apparent inconsistency disappears and each phrase is given meaningful operation when § 5–101.01(B) is read to fulfill the obvious legislative intent that the director serve at the pleasure of the governor for a term *not to exceed* five years.

¶ 15 Courts in other states have reached the same conclusion when construing similar language. For example, the Supreme Court of Delaware, in *Collison v. State ex rel. Green,* 2 A.2d 97, 99 (Del.1938), interpreted a statute that provided for an Industrial Accident Board with members to be appointed for terms of six years and allowed the governor to remove any member of the board "with or without cause." The *Collison* court framed the question:

> Is the term a fixed and definite one for years and the removal clause a separate, distinct and independent provision having no connection with the definition of the term's length? Or is the term one that is compounded of two things, viz., years and the appointing power's, the Governor's, pleasure, so as to make it indefinite with an outside limit for its duration?

*Id.* at 102. The court decided that the two provisions were "reasonably capable of reconciliation" and that both could be given effect. *Id.* at 103. It thus concluded that reading and construing the provisions together resulted "in the view that the term is an indefinite one, to be held during the pleasure of the appointing power, but ending in any event not later than the specified number of years," *id.* at 106, and explained:

> [T]he *intention* of the legislature as shown by the removal clause was that members of the Board should hold office for six years unless sooner removed by the Governor, or, putting the thought in another and clearer way, that they should hold their offices during the pleasure of the Governor but in no event longer than six years[.] The difference between saying "for six years, but the Governor may remove" and "during the pleasure of the Governor but for not longer than six years," is a difference only in manner of expressing the same fundamental thought which is that the term shall be an indeterminate and indefinite one not exceeding in any event the period of six years.

*Id.* at 103.[3]

¶ 16 More recently, in *Mackin v. City of Avon Lake,* 12 Ohio App.3d 70, 465 N.E.2d 1355, 1356 (1983), the court considered whether a city's director of law, who served "at the pleasure of Council for a term not exceeding two (2) years, nor in any event to exceed the duration of the elective term of Council which appoints him" was not employed for a definitely fixed period or term of office. It concluded that the provision did not create employment for a fixed term, explaining:

> With an appointment for a definite term the term for which the appointment is made is fixed, and can be for no other period. When, however, an individual serves at the pleasure of the appointing body, that individual has no right to the office for any specific period and the appointment is not made for a fixed and definite period of time. In this case the charter provides for both a specified term and for removal at the pleasure of the appointing authority. These provisions are not in conflict, and provide that the appointee holds the office at the pleasure of the appointing authority, but in no event

---

3. The *Collison* court relied on similar holdings in *State v. Mitchell,* 50 Kan. 289, 33 P. 104 (1893); *People ex rel. Gere v. Whitlock,* 92 N.Y. 191 (1883); *State v. Prater,* 48 N.D. 1240, 189 N.W. 334 (N.D.1922); *State v. Burke,* 8 Wash. 412, 36 P. 281 (1894).

longer than the term. Such a provision gives rise to an indefinite term.

*Id.* (citations omitted).

¶ 17 The results in these cases reasonably give effect to provisions that both establish a term of appointment and also provide that service in the position is at the pleasure of the appointing authority. Concluding that § 5–101.01(B) should be interpreted in a like manner, we hold that Higginbottom's appointment agreement was for a five-year term unless removed by the governor before the term expired.[4]

¶ 18 Finally, Higginbottom argues that defendants should be estopped from denying him the benefits of the contract because he relied on the contract to his detriment. To prove promissory estoppel, Higginbottom must show that the defendants made a promise and should have reasonably foreseen that he would rely on that promise; Higginbottom must also show that he actually relied on the promise to his detriment. *See Contempo Constr. v. Mountain States Tel. & Tel. Co.,* 153 Ariz. 279, 282, 736 P.2d 13, 16 (App.1987). Higginbottom can only recover under the theory of promissory estoppel if he had a "justifiable right to rely" on the alleged promise. *Trollope v. Koerner,* 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970). "Reliance is justified when it is reasonable, but is not justified when knowledge to the contrary exists." *Carondelet Health Servs. v. Ariz. Health Care Cost Containment Sys. Admin.,* 187 Ariz. 467, 470, 930 P.2d 544, 547 (App.1996) (citations omitted).

---

4. Of course, as happened here, at the end of the five-year term, the governor may reappoint the director to a new five-year term subject to reconfirmation by the Senate. *See* A.R.S. § 38– 211(B).

¶ 19 The record shows that Higginbottom knew that he served at the pleasure of the governor. He wrote to the Director of the State Human Resources Division that he had "never been able to convince [him]self that 'serving at the pleasure of the Governor' meant anything but what it says," and he had no quarrel with the conclusion that his position was "not actually that of a person serving a fixed term." Therefore, Higginbottom was not justified in believing that his appointment could not be terminated during the term specified in the appointment agreement, and he could not have reasonably relied on what he allegedly perceived as the promise of a full five-year term. Accordingly, he cannot establish the necessary elements of promissory estoppel.

## CONCLUSION

¶ 20 For the reasons discussed above, we affirm the trial court's grant of summary judgment in favor of defendants. Defendants request an award of their attorneys' fees incurred in this appeal pursuant to A.R.S. § 12–341.01(A) (1999). In our discretion, we grant their request in an amount to be determined by this court upon their compliance with Arizona Rule of Civil Appellate Procedure 21. As prevailing parties, defendants are also entitled to an award of their costs incurred on appeal.

CONCURRING: JAMES B. SULT, Presiding Judge, and JON W. THOMPSON, Judge.

APPENDIX

**JANE DEE HULL**
GOVERNOR
STATE OF ARIZONA

# APPOINTMENT BY GOVERNOR

# POSITION HAVING A FIXED TERM

Name of Appointee: ___James H. Higginbottom_____

Position to Which Appointed: ___Director of the Racing Department_____

Date of Appointment: ___December 1, 1998_____

Term of Appointment:    From: ___June 25, 1998_____

To: ___June 25, 2003_____

Compensation:

Initial Salary: ___$75,000.00_____

Salary Adjustments to be Allowed For:
___X___ Any Position Regrades
___X___ General Increases Provided to All State Employees
___X___ Merit Increases

Benefits:    The same benefits provided covered state employees, with the exception that annual leave shall accrue at the rate of 6.47 hours per pay period and accumulated leave may be carried over at the end of each calendar year up to 320 hours.