NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA ex rel. LAUREN KINGRY, Superintendent of the Arizona Department of Financial Institutions, *Plaintiff*,

*v.*

LANDMARC CAPITAL & INVESTMENT COMPANY, *Defendant*.

JUNE H. BEHRENDT; FIRST TRUST COMPANY OF ONAGA, Custodian FBO Beverly Clarke IRA, BENNETT A. GRIMM JR. and SUSAN V. GRIMM; KAREN CHOPRA LIVING TRUST U/A/D 2/26/27; FIRST TRUST COMPANY OF ONAGA, Custodian FBO Stephen Leshner IRA; FIRST TRUST COMPANY OF ONAGA, Custodian FBO Michael Macken IRA; FIRST TRUST COMPANY ONAGA, Custodian FBO Robert Rader IRA; RUSSELL INVESTMENTS, LP; FIRST TRUST COMPANY OF ONAGA, Custodian FBO Rhonda Kay Solheim IRA; JOHN K. SOLHEIM and BROOKE SOLHEIM; URQUIETA SMYTHE FAMILY TRUST U/A/D 11/1/90; OXTOX HOLDINGS, LLC; RHONDA KAY SOLHEIM FAMILY TRUST U/A 05-09-77; SPRUCE AVENUE LTD. PARTNERSHIP, LLP; ROBERT BUCHHEIT; PK HOLDINGS, LLC; and THE 1977 GILL TRUST U/A 12/07/77, *Plaintiffs/Appellees/Cross-Appellants*,

*v.*

LANDMARC CAPITAL PARTNERS, LLC, an Arizona Limited Liability Company, *Defendant/Appellant/Cross-Appellee*.

OXTOX HOLDINGS, LLC; RHONDA KAY SOLHEIM FAMILY TRUST U/A 05-07-7 SPRUCE AVENUE LTD. PARTNERSHIP, LLP; ROBERT BUCHHEIT; PK HOLDINGS, LLC; and THE 1977 GILL TRUST U/A 12/07/77, *Plaintiffs/Appellees/Cross-Appellants*,

*v.*

LANDMARC CAPITAL PARTNERS, LLC, an Arizona Limited Liability Company, *Defendant/Appellant/Cross-Appellee*.

No. 1 CA-CV 14-0022
1 CA-CV 14-0516
(CONSOLIDATED)
FILED 12-29-16

―――――――――――――――

Appeal from the Superior Court in Maricopa County
No. CV2009-020595 and CV2009-050052
(CONSOLIDATED)
The Honorable Lisa Daniel Flores, Judge

**REVERSED AND REMANDED**

―――――――――――――――

COUNSEL

Ramras Law Offices, PC, Phoenix
By David N. Ramras
*Counsel for Plaintiffs/Appellees/Cross-Appellants*

Lang & Klain, PC, Scottsdale
By Kent A. Lang, William G. Klain, George H. King

Russell Piccoli, PLC, Phoenix
By Russell Piccoli
*Co-Counsel for Defendant/Appellant/Cross-Appellee*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge John C. Gemmill (retired) joined.

---

**C A T T A N I**, Judge:

**¶1**   Landmarc Capital Partners, LLC ("Partners") appeals from the superior court's grant of summary judgment in favor of several investors (the "Oxford Investors")[1] on issues relating to various real estate investment loans. The Oxford Investors cross appeal from the superior court's denial of their application for attorney's fees. For reasons that follow, we reverse the superior court's grant of summary judgment to the Oxford Investors and remand for further proceedings consistent with this decision.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**   In 2006, Landmarc Capital & Investment Co. ("Landmarc"), a licensed mortgage broker, formed Partners, a limited liability company, as a vehicle for making secured real estate loans and selling participation interests in such loans. Landmarc's officers—President David Crantz, Vice President Jeff Petersen, and Secretary Malecia Golf—also served as Partners's management team.

**¶3**   In 2007, Landmarc brokered a $3.36 million loan (the "Westgate Loan") secured by a deed of trust on commercial property in Glendale (the "Westgate Property"). Landmarc thereafter sold participation and security interests in the Westgate Loan to, among others, Partners and the Oxford Investors. The agreements between Landmarc and the Oxford Investors were negotiated by Petersen and Allen Weintraub on

---

[1]  The Oxford Investors are: June H. Behrendt; First Trust Company of Onaga, Custodian FBO Beverly Clarke IRA, Bennett A. Grimm Jr. and Susan V. Grimm; Karen Chopra Living Trust UAD 2/26/07; First Trust Company of Onaga, Custodian FBO Stephen Leshner IRA; Michael J. Macken Revocable Trust U/A/D 11/17/95; First Trust Company of Onaga, Custodian FBO Rhonda Kaye Solheim IRA; John K. Solheim and Brooke L. Solheim; and Urquieta Smythe Family Trust U/A/D 11/1/90.

behalf of Landmarc, and by investment advisor Walter Clarke on behalf of the Oxford Investors.

**¶4**        The participation agreements themselves did not grant any investor priority over any other, and instead specified that recovery in the event of default (after covering collection costs) would be shared among investors in proportion to each investor's participation interest. But both before and after the Oxford Investors entered the participation agreements, Petersen, who was authorized to sign documents "relating to the sale of participation in deeds of trust" on Landmarc's behalf, sent Clarke multiple letters (the "Petersen Letters") "certif[ying]" that the Oxford Investors were "in a first payout position" and would be paid first in the event of a default on the Westgate Loan. The core of the current dispute is whether the letters granted the Oxford Investors first-out priority.

**¶5**        In late 2008, following the borrower's default on the Westgate Loan, Landmarc foreclosed on the Westgate Property and took title via a trustee's deed. Landmarc then conveyed legal title to the Westgate Property via warranty deed to LCI-Westgate, L.L.C. ("LCI-Westgate")—a limited liability company of which Landmarc was (at the time) the only member and which had no operating agreement.

**¶6**        Soon thereafter, Landmarc went into receivership. The superior court appointed a Receiver for Landmarc in June 2009, and subsequently authorized the Receiver to assume control of Landmarc and to "conduct the business operations of Landmarc and the entities it control[led]." Because Landmarc was the sole manager of Partners, the Receiver assumed that role.

**¶7**        In April 2010, the Receiver, in its capacity as manager of Partners, signed an operating agreement for LCI-Westgate (which then owned the Westgate Property). The operating agreement named Partners, the Oxford Investors, and other participants in the Westgate Loan as members of LCI-Westgate, and it specified a first-out payment priority for the Oxford Investors. The Receiver then filed Petition 41 with the superior court, seeking, as relevant here, ratification of its decision to enter the LCI-Westgate operating agreement. The superior court granted the petition and ratified the operating agreement, but this court reversed on appeal, concluding that Partners lacked notice and an opportunity to be heard on the petition. *State ex rel. Kingry v. Landmarc Capital Partners, LLC*, 1 CA-CV 11-0739, 2012 WL 4893397, at *3, ¶ 19 (Ariz. App. October 16, 2012) (mem. decision). This court did not determine the validity of the Oxford Investors' claim of first-out priority, but rather remanded the case, concluding that

4

whether the parties were bound by Petersen's agreement to preferential treatment involved "factual issues unsuited for resolution as a matter of law on appeal." *Id.* at *4, ¶ 21.

¶8        Meanwhile, the Receiver filed Petition 54 seeking court approval of its conclusion that the Petersen Letters reflected a valid and enforceable pre-receivership agreement granting the Oxford Investors first-out priority for participation claims among Landmarc's investors. The Oxford Investors filed a complaint in superior court requesting a ruling that the Petersen Letters' first-out provision was enforceable under principles of promissory estoppel. On cross-motions for summary judgment, the superior court granted judgment as a matter of law in favor of the Oxford Investors and against Partners, holding that the Oxford Investors reasonably relied on the Petersen Letters to establish first-out priority, and that the first-out provision was thus enforceable on the basis of promissory estoppel.

¶9        The Oxford Investors then moved for summary judgment seeking approval of Petition 41, which the superior court granted based in part on its ruling on Petition 54 that the first-out provisions were in place and enforceable at the time the Receiver was appointed (such that the LCI-Westgate operating agreement reflecting the Oxford Investors' priority position was appropriate). The court denied without comment the Oxford Investors' request for attorney's fees.

¶10        Partners timely appealed from the Petition 54 and Petition 41 judgments, and the Oxford Investors timely cross-appealed the denial of attorney's fees, and we consolidated the appeals. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1).[2]

## DISCUSSION

¶11        Partners challenges the superior court's grant of summary judgment in favor of the Oxford Investors on both Petition 54 and Petition 41. Summary judgment is only appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990). We review a grant of summary judgment de novo, considering the facts in the light most favorable to the party opposing it. *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365, ¶ 7 (2015).

---

[2]        Absent material revisions after the relevant date, we cite a statute's current version.

I.      **Petition 54.**

**¶12**          Partners argues that the superior court erred by awarding summary judgment to the Oxford Investors on Petition 54 based on promissory estoppel.  To prove promissory estoppel, the promisee must show that a promise was made, the promisor should have reasonably foreseen the promisee's reliance, and the promisee actually relied on that promise.  *See Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 210 Ariz. 503, 507, ¶ 19 (App. 2005).  The promisee's reliance must be reasonable under the circumstances.  *Higginbottom v. State*, 203 Ariz. 139, 144, ¶ 18 (App. 2002).  Whether reliance is reasonable is generally a question of fact. *See John C. Lincoln Hosp. & Health Corp. v. Maricopa Cty.*, 208 Ariz. 532, 537, ¶ 10 (App. 2004) ("Questions of estoppel, including reasonable reliance, are fact-intensive inquiries.").

**¶13**          The only element of promissory estoppel in dispute here is the reasonableness of the Oxford Investors' reliance on the Petersen Letters. Partners contends that disputed issues of fact should have precluded summary judgment on whether the Oxford Investors reasonably relied on the Petersen Letters' assurances of first-out priority.  We agree.

**¶14**          There was evidence supporting a finding that the Oxford Investors had good reason to rely on the Petersen Letters.  Petersen (who was negotiating the purchase agreements on behalf of Landmarc) sent Clarke (who was negotiating on behalf of the Oxford Investors) the January 2008 letters "certif[ying]" that the Oxford Investors were "in a first payout position" in the event of default on the Westgate Loan.  An email sent to the Oxford Investors in August 2008, after the Oxford Investors had entered the participation agreements, reiterated their "first payout position" in the event of asset liquidation.  Landmarc (as manager of Partners) had authority to make all decisions and enter any agreements for Partners; Landmarc's authority in this regard was set forth in Partners's operating agreement and was communicated to the Oxford Investors in the 2007 offering documents related to participation in the Westgate Loan. Moreover, as the superior court noted, Petersen was undisputedly a principal of Landmarc, and he acted as part of Partners's management team along with other Landmarc principals.  And Landmarc issued a corporate resolution on January 1, 2008, that authorized Petersen "to sign any documents relating to the sale of participation in deeds of trust."  Along with affidavits and testimony from Clarke, Weintraub, and Golf recounting meetings in which Petersen promised first-out priority for the Oxford Investors, this evidence weighs in favor of a finding that the Oxford Investors reasonably relied on the Petersen Letters.

¶15            However, Partners offered evidence supporting the contrary position that the Oxford Investors knew or should have known that Landmarc had refused to grant them first-out priority, and thus should not have relied on the Petersen Letters.   First, the written participation agreements that formalized the transaction (entered after the January Petersen Letters) did not grant any particular investor or investor group a priority position and did not contemplate subordination of other investors' interests.   These contracts further included a merger clause providing that the formal written agreement "constitutes the entire agreement among the parties.  It supersedes any prior agreement or understanding among them, and it may not be modified or amended in any manner unless in writing executed by both parties hereto."   And Clarke acknowledged that he had never before entered a priority agreement when the transactional document itself made no specific reference to such priority.

¶16            Second, Crantz and Petersen offered sworn statements contrary to the Oxford Investors' position.  Crantz stated that, on behalf of Landmarc, he personally refused Clarke's request to sign a first-out agreement, and he personally informed Clarke that Petersen lacked authority to offer a priority position to an investor.  And Petersen avowed that his letters were not intended to commit Landmarc to granting the Oxford Investors a first-out priority, but were merely intended to reassure the Oxford Investors that Landmarc would not short-sell the Westgate Property in the event of a default.

¶17            The Oxford Investors argue the Crantz and Petersen declarations should be disregarded as conclusory. *See Florez v. Sargeant*, 185 Ariz. 521, 526 (1996) ("[A]ffidavits that only set forth ultimate facts or conclusions of law can neither support nor defeat a motion for summary judgment.").   But these declarations do more than simply assert in conclusory fashion that the Oxford Investors' reliance was not reasonable; rather, they offer competing testimony regarding specific communications with Clarke that, if credited by the factfinder, would undermine the reasonableness of the Oxford Investors' purported reliance on the Petersen Letters. *See Higginbottom*, 203 Ariz. at 144, ¶ 18 (noting that reliance "is not justified when knowledge to the contrary exists.").

¶18            The Oxford Investors additionally posit that the Crantz and Petersen declarations are inadmissible parol evidence seeking to vary the interpretation of the Petersen Letters.  But the issue is not one of contract interpretation; instead, the declarations offer evidence of other circumstances and communications contrary to the language of the

Petersen Letters, knowledge of which would tend to undermine the reasonableness of the Oxford Investors' reliance on the Petersen Letters.

¶19      Although the superior court minimized the Crantz and Petersen declarations as "self-serving" and contradictory to other record evidence, the declarants' motives go to their credibility, not to the admissibility of their statements. *See Aranda v. Cardenas*, 215 Ariz. 210, 219, ¶ 34 (App. 2007). And the inconsistency between the Oxford Investors' evidence showing that Petersen apparently was authorized to enter first-out agreements and Crantz's account of his contrary communication to Clarke reveals a genuine issue of material fact.

¶20      Third, Partners offered evidence that Weintraub (at Petersen's request), sent an email to the Oxford Investors in February 2008 stating, "Regarding the re-assignment of interests, and placing investors in subordinate position, we can not and have never placed an investor in subordinate position." Although Weintraub stated in his deposition that this email "may" have been referring to a situation involving a warehouse lender (as opposed to subordinating an investor's interests to those of another investor), Weintraub admitted he "d[id]n't know" for certain whether the email was referring to the warehouse lender or to the Oxford Investors. Absent clarification, this email arguably put the Oxford Investors on notice to make further inquiry or request a more formal statement from Partners regarding their payout priority. *See Manicom v. CitiMortgage, Inc.*, 236 Ariz. 153, 160, ¶ 29 (App. 2014) (estoppel should not be applied when a party was on notice that further inquiry may be warranted).

¶21      When a factfinder must decide "the credibility of witnesses with differing versions of material fact," or "weigh the quality of documentary or other evidence," or "choose among competing or conflicting inferences," summary judgment is not appropriate. *See Orme Sch.*, 166 Ariz. at 311. Although the Oxford Investors offered substantial evidence supporting their reliance on the first-out priority reference in the Petersen Letters, Partners offered contrary evidence from which a factfinder could conclude the Oxford Investors' reliance was not reasonable. Given this dispute of material fact, neither party was entitled to judgment as a matter of law on the Oxford Investors' promissory estoppel claim, and the superior court erred by granting summary judgment in favor of the Oxford Investors regarding Petition 54.

## II.     Petition 41.

¶22         Partners also disputes the superior court's grant of summary judgment in favor of the Oxford Investors on Petition 41, ratifying their priority payout position as reflected in the LCI-Westgate operating agreement.  The superior court's decision on Petition 41 was premised on its ruling approving Petition 54, in which the court found that the Oxford Investors had first-out priority and that this priority position was created prior to appointment of the Receiver.  Because we reverse summary judgment on Petition 54, we likewise reverse the resulting grant of summary judgment on Petition 41.  And because we reverse summary judgment for the Oxford Investors on Petition 41, their cross-appeal regarding the denial of their request for attorney's fees is moot.

## CONCLUSION

¶23         For the foregoing reasons, we reverse the superior court's grant of summary judgment regarding Petitions 54 and 41 and remand for further proceedings.  In light of this disposition, we deny the Oxford Investors' request for an award of attorney's fees on appeal pursuant to the LCI-Westgate operating agreement.  In an exercise of our discretion, we similarly deny Landmarc's request for attorney's fees under A.R.S. § 12-341.01.

