650 P.2d 438

**Wallace D. CHEWNING, Plaintiff-Appel- lee-Cross Appellant,**

v.

**E. Payne PALMER, III, Defendant-Ap- pellant-Cross Appellee.**

No. 15834.

Supreme Court of Arizona,
In Division.

June 28, 1982.

Ryley, Carlock & Ralston by Stephen R. Kaufmann, A. Daniel Sheffield, Jr., Phoe- nix, for plaintiff-appellee-cross appellant.

Jennings, Strouss & Salmon by Riney B. Salmon II, Neil Vincent Wake, Phoenix, for defendant-appellant-cross appellee.

CAMERON, Justice.

This is an appeal from the granting of a motion for summary judgment in favor of plaintiff Wallace D. Chewning against E. Payne Palmer III, the alleged guarantor of a $10,000 corporate debenture. We have jurisdiction pursuant to Rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

We need answer only one question on appeal and that is: Was there a genuine issue of material fact whether Chewning forbore suit in reliance upon the promise of Palmer to pay the amount due on the de- benture?

The facts necessary for a determination of this issue are as follows. In 1971, Chewning purchased a $10,000 eight per- cent subordinated convertible debenture of Gemini Guild, Inc., an Arizona corporation. Chewning made this investment upon the advice of his then son-in-law, Palmer. The annual $800 interest payments were made for three years. When the debenture was not redeemed on the date of maturity on 30 June 1974, Chewning inquired of Palmer why the principal of his investment had not been repaid. Later, Palmer wrote the fol- lowing letter to Chewning:

"Dear Wally:

"I talked with Gary Adams today regard- ing the status of the debenture with Gemini Guild. As you know, Gary has been ill for 2½ years, and I am happy to report he is now recovered and is now back at work full-time. His company is not in a position to redeem the debenture now. However, Gary is a very serious- minded young man who will meet his obligations. They are starting to operate the business at a profit, and Gary hopes

to redeem the debenture in March or April of 1975.

"Needless to say, Wally, I feel very bad about putting you into this position. *If this investment goes completely bad, I will personally repay your total investment plus interest.* * * *

Best regards,

/s/ E. Payne Palmer III"

Chewning had not solicited the letter and he did not respond after its receipt.

Despite Palmer's divorce from Chewning's daughter in 1976, Palmer continued in his attempt to assist his former father-in-law to recover the principal of his debenture. Eventually, it became apparent that Gemini Guild was insolvent and unable to repay its creditors. In 1979, Chewning filed a complaint against Palmer as guarantor of Gemini's unsatisfied obligation.

After filing of suit, Chewning's deposition was taken and he testified as follows:

"Q Okay. And did you do anything in March or April of 1975 when the debenture was not redeemed as Mr. Palmer suggested it would be?

"A No, I didn't do anything.

\* \* \* \* \* \*

"Q Why is it that you waited, sir, then, from June of 1974 until just recently, when this lawsuit was filed, to pursue collection of the note from Gemini Guild?

"A Well, I certainly want to get my money back.

"Q Well, I know. But let's take the date that is in this letter of Mr. Palmer's—March or April of 1975. You know that's over four years you have waited before pursuing Gemini Guild. Why did you wait so long? To me, that seems a long period of time to wait, sir.

"A Now, let me tell you something. That shows how patient I am. But Gary Adams never communicated with me when I came down here. I talked to the man at Turnbar—or what was his name? Turnbar. And

he told me what a fine character Gary Adams was.

\* \* \* \* \* \*

"Q But, prior to that time, you did not consider contacting an attorney before and taking legal action against Gemini Guild?

"A No.

"Q Why not?

"A Who knows?

"Q You do not know at the present time?

"A No. I know I didn't contact anybody.

"Q I know that.

"A Well, I would say I was very patient, wouldn't you? Extremely patient. What would a bank do under the same circumstances?

\* \* \* \* \* \*

"Q But what I'm trying to find out is whether or not you gave Gemini Guild some more time because of your knowledge that one of their principals apparently was having some health problems.

\* \* \* \* \* \*

"A Well, it would have.

"Q Well, is there any other explanation of your waiting this period of time?

"A Well, I thought he might stage a comeback. Who knows?

"Q Stage a comeback?

"A I mean, I have been broke and survived it, and I figure he would be the same way. So I thought it was rather human, although I would—although I would rather have had the money and not been quite so human."

Later Chewning moved for summary judgment. Chewning's affidavit in support of the motion for summary judgment stated:

"Shortly after November 26, 1974, I received a letter from Palmer advising me that Gemini Guild was unable to redeem the debenture which I purchased from it, but promising me that he would personal-

ly repay my total investment plus interest if the investment went completely bad.

"Because of this letter from Palmer, I chose not to institute legal proceedings against Gemini Guild."

Summary judgment against Palmer was entered in the amount of $14,688.20 in principal and accrued interest, plus costs and $300 in attorney's fees. From this judgment, Palmer appeals, and Chewning cross-appeals the reasonableness of the attorney's fees awarded.

### PROMISSORY ESTOPPEL

Palmer's promise to repay Chewning's investment is not enforceable at law for the lack of a bargained-for-exchange. See *J. H. Queal & Co. v. Peterson,* 138 Iowa 514, 116 N.W. 593 (1908); Annot., 74 A.L.R. 293 (1931). Chewning must then rely on his equitable remedy under the theory of promissory estoppel. This court has accepted the definition of promissory estoppel as it appears in section 90 of the Restatement of the Law of Contracts. *Weiner v. Romley,* 94 Ariz. 40, 381 P.2d 581 (1963); *Waugh v. Lennard,* 69 Ariz. 214, 211 P.2d 806 (1949).

"§ 90. Promise Reasonably Inducing Action for Forbearance

"(1) A promise which the promissor should reasonably expect to induce action or forbearance on the part of the promissee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires." Restatement (2d) of Contracts, § 90 (1981).

To avail himself of this provision of the Restatement, Chewning must show that he refrained or forbore his right to sue on the debenture in reliance upon Palmer's promise to repay Chewning's "total investment plus interest."

The precise issue in dispute is whether Chewning forbore proceeding against Gemini Guild in reliance on the promise of his former son-in-law that he would assume the obligation of repaying the investment if Gemini Guild did not. Chewning's intentions in this regard are not clear. Chewning neither solicited Palmer's promise, nor responded when it was made. Chewning's testimony in his deposition does not indicate that he relied upon Palmer's promise to pay. In an appeal from the granting of a motion for summary judgment, the evidence, as well as all inferences reasonably drawn therefrom, will be viewed in the light most favorable to the parties against whom summary judgment was granted. *Antwerp Diamond Exchange of America, Inc. v. Better Business Bureau of Maricopa County,* 130 Ariz. 523, 637 P.2d 733 (1981); *Boyle v. City of Phoenix,* 115 Ariz. 106, 563 P.2d 905 (1977). For summary judgment to have been properly granted in this case, there must be no genuine issues of material fact. Antwerp Diamond Exchange of America, Inc., supra; Rule 56, Arizona Rules of Civil Procedure, 16 A.R.S. We believe that there are sufficient issues of material fact left to be resolved in this case, and it was error to grant Chewning's motion for summary judgment.

We note that the Court of Appeals case of *Glitsos v. Kadish,* 4 Ariz.App. 134, 418 P.2d 129 (1966) is cited in support of the granting of the motion for summary judgment. Glitsos, supra, can be distinguished from the instant case in that in Glitsos, it was stipulated by the parties that there was reliance and forbearance upon the promise to pay. There is no such agreement as to the facts in the instant case.

As to the matter of attorney's fees, we need not consider that issue at this time as that can be determined on remand.

Reversed and remanded with instructions for further proceedings consistent with this opinion.

HAYS and FELDMAN, JJ., concur.