739 P.2d 203

**G.M. AMBULANCE AND MEDICAL SUPPLY COMPANY, INC., an Arizona corporation, Plaintiff/Appellant,**

v.

**CANYON STATE AMBULANCE, INC., an Arizona corporation, Defendant/Appellee.**

No. 2 CA–CV 5920.

Court of Appeals of Arizona, Division 2, Department A.

March 17, 1987.

Reconsideration Denied April 28, 1987.

Review Denied July 7, 1987.

Culbert & DeNinno by David R. Pardee, Globe, for plaintiff/appellant.

Alan Slaughter, P.C. by Alan Slaughter, Payson, for defendant/appellee.

OPINION

HOWARD, Presiding Judge.

This is an appeal from a judgment entered following a trial to the court, sitting without a jury, denying the plaintiff, G.M. Ambulance and Medical Supply Company, Inc. (G.M.) any damages as a result of an alleged intentional interference by the defendant, Canyon State Ambulance, Inc. (Canyon State) with G.M.'s prospective contractual relations.

The facts considered in the light most favorable to Canyon State are as follows. G.M. operated an ambulance service in the Globe-Miami area. In April 1983, Canyon State extended its service into the Globe-Miami area. It had not been operating there prior to that time. The legislature enacted a new law effective May 5, 1983, which requires ambulance services to obtain a certificate of necessity from the State Health Department in order to operate. See A.R.S. § 36–2233. Chapter 324, § 6, Laws of 1983, contains a savings clause as to existing ambulance services.[1] It states:

"A. Notwithstanding § 36–2233, Arizona Revised Statutes, as added by § 5 of this act, any ambulance service which is in operation on the effective date of this act shall have one hundred twenty days from the effective date of this act to apply for an initial certificate of necessity. Until the application is granted or denied, the ambulance service may continue providing the services it was providing on February 1, 1983...."

G.M. applied for a certificate of necessity, as did Canyon State; however, Canyon State suspended operations until it received a letter from the State Health Department, which it apparently requested in order to

---

1. Section 6 followed, but was not a part of A.R.S. § 36–2244. Laws 1983, Ch. 324, § 6, sub-section A now follows A.R.S. § 36–2233.

clarify the meaning of the savings clause. The letter stated:

"Dear Mr. Belk:

Under A.R.S. 36–2244, Section 6, 'Existing Ambulance Services', the Assistant Attorney General for the Civil Division, Mrs. Jean Weaver, has advised this office that ambulance services in operation as of February 1, 1983 until the effective date of H.B. 2195 on May 5, 1983 can operate anywhere in the state up to the issuance of a Certificate of Necessity by the Director of the Arizona Department of Health Services.

This reverses an earlier opinion by Legislative Legal Council that applied a geographical restriction or limitation to the wording of Section 6 which indicated that ambulance services could not expand territory or service areas.

According to Mrs. Weaver, Section 6 does not apply to a geographical designation since the wording does not say service 'area', but 'services.' The wording 'services' applies to the level of services being offered by the ambulance company and not a territorial definition. The ambulance services could not, for instance, increase or change their services from Basic Life Support with Basic Emergency Medical Technicians as attendants to an Advanced Life Support service by the addition of Intermediate Emergency Medical Technicians or Paramedics as attendants if they were not previously offering that service on the effective date of this act.

We correctly stated that ambulance services could not expand service areas or territory to you earlier. Legislative Legal Council clearly interpreted the law to both Mr. Henry and I that way. It was their intention in drafting the law to prevent an expansion of territory by Section 6. However, when they wrote the law, they errored [sic] and what they wrote was subsequently reviewed by the Attorney General's office on limiting or restricting expansion as not being accomplished. *Both groups of attorneys are now in agreement that Section 6 does not prevent ambulance services from expanding their territory or service areas.*

You can not [sic], as an ambulance service, provide IEMT services if your previous level of service was Basic EMT. I realize that your employees may be required to provide treatment to patients at their certified skill level and that should be on their own responsibility. I am only commenting on ambulance service laws.

Sincerely yours,
/s/ Peter Franklin
Chief, Resource Bureau"

(Emphasis in original)

After receipt of the letter Canyon State commenced its ambulance operation in the Globe-Miami area.

In October 1983, G.M. filed a complaint against Canyon State seeking to enjoin it from operating in the area and further seeking damages for wrongful interference with prospective business relations. Subsequently, G.M. moved for a summary judgment on its request for injunctive relief. The trial court disagreed with the Department of Health Service's interpretation of § 6, the savings clause, and in September 1984, granted the motion for summary judgment, enjoining Canyon State from operating in the area. The tort claim was then tried, and the court entered judgment in Canyon State's favor.

G.M. contends on appeal that the trial court, having found Canyon State violated the statute, should have found in its favor on the question of liability as a matter of law. G.M. further contends that the trial court erred in finding that it did not prove its damages. We need not discuss the issue of damages since we agree with the trial court's conclusion on the issue of liability.

In *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985), the court adopted the Restatement view of the law dealing with interference with contract. Restatement (Second) of Torts, § 766B states:

"One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to

marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of

(a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or

(b) preventing the other from acquiring or continuing the prospective relation."

Comment *b* to § 767 states:

"... The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors...."

Here, we believe that the two factors which are to be given the most weight are the nature of the actor's conduct and the actor's motive. Conduct specifically in violation of statutory provisions has been held, for that reason, to make an interference improper. *Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982); see also W. Prosser and W. Keeton on Torts, 5th Ed., § 130; Restatement (Second) of Torts, *supra*, Comment on Clause (a). We believe, however, that Canyon State's violation of the statute is outweighed by the good faith reliance on the letter. Canyon State relied on the opinion of the very department charged with regulating its conduct. Under such circumstances we do not believe that it acted improperly so as to subject itself to liability for the tort of interference with contract.

Affirmed.

HATHAWAY, C.J., and FERNANDEZ, J., concur.