**EMPLOYERS REINSURANCE CORPORATION, Plaintiff,**

v.

**GMAC INSURANCE, et al., Defendants.**

**No. CV–03–0625–PHX–FJM.**

United States District Court, D. Arizona.

March 16, 2004.

Thomas Humphrey Lawrence, III, Edwin L. Rawson, Lawrence & Russell LLP, Memphis, TN, for Plaintiff.

Benjamin C. Thomas, Esq., Barry Matthew Markson, Thomas & Elardo PC, Donald Wilson, Jr., Esq., Brian William Purcell, Broening Oberg Woods & Wilson PC, Phoenix, AZ, for Defendants.

## ORDER

MARTONE, District Judge.

The court has before it Plaintiff's First Motion for Partial Summary Judgment (doc. 23), Brown's Cross–Motion (doc. 34–2), GMAC's Cross–Motion (doc. 31) and Brown's Motion for Rule 56(f) Relief (doc. 34–1). The court also has before it Plaintiff's Second Motion for Partial Summary Judgment (doc. 45) and GMAC's Second Cross–Motion (doc. 66). For the reasons set forth below, we deny Plaintiff's motions and grant the defendants' cross-motions.

### I.  Introduction

#### A.  Facts

This is an action to recover medical expenses incurred by non-party Cynthia Gear ("Gear") when she was injured in an accident. The Embry–Riddle Aeronautical

University Welfare Benefit Plan ("the Plan"), of which Gear was a beneficiary, paid the expenses. Plaintiff, the Plan's assignee, claims that Gear was obligated to subrogate or reimburse the Plan if she recovered compensation from the third party that injured her.[1]

After her injuries, Gear retained defendant Brown as her lawyer to recover compensation from the third party that caused the accident. Defendant GMAC, insurer for the third party, paid Gear $105,000 to settle the claim.

During the course of the settlement negotiations between GMAC and Brown, Plaintiff asserted its claims to the settlement proceeds. Brown responded to Plaintiff's assertions by offering a settlement. Plaintiff rejected the offer. In a February 11, 2003, letter, Brown stated his position that Plaintiff had no "contractual rights of subrogation or reimbursement under ERISA." Brown's Statement of Facts, Exhibit B at 1. Brown cited *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), which holds that ERISA does not support a cause of action to enforce subrogation or reimbursement agreements. Brown invited Plaintiff to provide legal authority to the contrary. The letter stated, "If you have any legal authority in the 9th Circuit which contradicts these cases [*Knudson* and its progeny], I would be very interested in reviewing that authority. However, in the absence of such authority, your company does not have any claims to these funds." Brown's SOF, Exhibit B at 3. Plaintiff did not provide Brown any such authority.

Later, on February 28, 2003, Brown sent GMAC a Ninth Circuit decision following *Knudson* and explained his position that Plaintiff had no claim to the settlement funds. On March 13, 2003, GMAC disbursed the $105,000 to Brown. On March 15, Brown disbursed the money to himself and Gear.

### B. Procedural History

On March 13, 2003, the same day that GMAC disbursed the $105,000 to Brown, Plaintiff filed an action against Gear and Brown in the United States District Court for the Middle District of Florida, asserting Plaintiff's claims under the enforcement provisions of ERISA, 29 U.S.C. § 1132.

On March 14, Plaintiff moved for a preliminary injunction. The court denied Plaintiff's motion, citing *Knudson, supra*, for the proposition that Plaintiff had no federal claim. Plaintiff voluntarily dismissed the Florida action shortly after the motion was denied. Plaintiff then filed this action asserting its claims under state law, naming Brown and GMAC as defendants. Gear is not a party to this action.

Brown moved to dismiss the complaint, arguing that *Knudson* barred Plaintiff's claims. In our Order dated November 7, 2003, we rejected that argument because *Knudson* only precludes Plaintiff's federal claims. *Knudson* expressly declined to address potential state law claims. *Knudson*, 534 U.S. at 219, 122 S.Ct. 708.

Brown also argued that ERISA preempted Plaintiff's state law claims. Although it was a close question, we decided that there was no preemption. We concluded:

> We recognize that this conclusion [of no preemption] results in asymmetry.

---

1. Plaintiff bases its subrogation/reimbursement claims on excerpts from putative Plan documents that purportedly created the subrogation/reimbursement rights. Notably, Gear testified that she had never seen a copy of the Plan or signed any documents to which the Plan was a party. Brown's SOF, Exhibit G. Plaintiff did not provide any evidence to controvert this testimony.

Plan participants may not assert state law claims to enforce the terms of the plan, *Pilot Life Insurance v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), but a plan may do just that.

This is not, however, the first asymmetry. Under *Knudson,* plans have no § 1132 remedy to enforce their ERISA rights under the terms of an employee benefit plan—yet plan participants do.

Nor is it an asymmetry of judicial creation. It is compelled by the tangled language of ERISA. Under the language of § 1132, plans and plan participants are treated differently. Thus, it should not be altogether surprising that § 1144 might treat them differently as well. More importantly, the purposes of ERISA—so critical to the Supreme Court's preemption jurisprudence—are affected differently where it is a plan, and not a plan participant, that brings suit.

For these reasons, we conclude that the apparent unfairness and asymmetry entailed by our decision (particularly when combined with *Pilot Life* ) do not outweigh the purpose-oriented decisions of the Supreme Court and the Ninth Circuit. Plaintiff's state law claims are not preempted.

Order of November 7, 2003, at 7–8. (doc. 33).

Having ruled that there was no preemption, we next concluded that the allegations in Plaintiff's complaint were sufficient to survive Brown's motion to dismiss. We now look beyond the allegations to review the merits of Plaintiff's case.

## II. Intentional Interference

■ Plaintiff asserts that Brown intentionally interfered with its contractual rights by distributing the GMAC settlement proceeds to himself and Gear. The tort of intentional interference includes five elements. Plaintiff must prove that (1) Plaintiff had a "valid contractual relationship" with Gear, (2) Brown knew about that relationship, (3) Brown intentionally interfered with the relationship and caused a breach, (4) Plaintiff suffered damages as a result, and (5) Brown's actions were "improper." *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 38 P.3d 12 (Ariz.2002).

## A. Valid Contract

The evidence is sufficient to establish a relationship between Gear and the Plan. However, there is a genuine dispute whether Gear had binding subrogation or reimbursement obligations.

Plaintiff's only evidence regarding the terms of the alleged contract is its quotation of excerpts from purported Plan documents. This is not sufficient. These documents are unsigned, undated and unauthenticated. Furthermore, Gear testified that she neither signed nor saw any contract with the Plan or with Plaintiff.

Plaintiff argues that Gear's status as a "plan participant," puts the issue of a "valid contractual relationship" beyond doubt. We disagree. While a properly devised ERISA plan might constitute a contract, the particular plan involved in this case might not be such a properly devised plan. Like any other contract, an ERISA plan might be invalid (in whole or in part) for a variety of reasons. Without specific evidence regarding the purported contract, we cannot assess its validity.

Genuine issues of material fact preclude summary judgment on the "valid contractual relationship" element of Plaintiff's claim. Was there a valid assignment, subrogation or obligation to reimburse? Was the contract flawed? If so, what are the parties' obligations? These issues are properly in dispute. Accordingly, we deny

the parties' motions for summary judgment on this issue.

### B. Knowledge and Intent

Brown knew of the Plan's relationship to Gear. He also knew of Plaintiff's contention that it had a claim to the GMAC settlement proceeds. However, the uncontroverted evidence shows that Brown had a good faith belief that Gear had no enforceable obligations regarding the GMAC settlement money.

Citing his good faith belief, Brown argues that he could not intentionally interfere with the alleged contractual relationship. Plaintiff responds that Brown knew "of the lien and…that the status of the Plan's lien under *Knudson* was, at the very least, open to question." Plaintiff's Reply to Brown's Response, at 4.

This raises the question whether a good faith belief that the contract was unenforceable would defeat the knowledge and intent elements of the tort. The parties have not substantively briefed the question. Brown cites malpractice cases for the "unsettled law doctrine," but does not connect these cases to knowledge or intent elements of the intentional interference tort. Similarly, Plaintiff cites Arizona's ethical rules, but does not connect them to the knowledge or intent elements. On this record, and because we can resolve the parties' motions on other grounds, we need not decide questions about the knowledge and intent elements of the tort. Accordingly, we deny the parties' motions for summary judgment on this issue.

### C. Causation and Damages

There are genuine issues of material fact regarding causation and damages. The scope of Gear's obligations to Plaintiff is genuinely disputed. Even assuming the existence of a contract, Plaintiff has not established that Gear had binding subrogation or reimbursement obligations. Furthermore, if Gear's obligation was a simple debt and not a true subrogation, it is unclear how Brown could have caused a breach. Without sufficient evidence to resolve these issues, Plaintiff cannot demonstrate causation or damages. We deny the parties' motions for summary judgment on this issue.

### D. Improper Conduct

Interference with contractual relations is not inherently tortious. Liability will be found only where the interference is somehow improper "as to motive or means." *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (Ariz.1985). Plaintiff argues that Brown's interference was improper because it violated Arizona Rule of Professional Conduct E.R. 1.15. Brown argues that he complied with E.R. 1.15, that he harbored no malice towards Plaintiff, and that his conduct was not improper under the standards set forth by the *Restatement (Second) of Torts* (1979). In our earlier Order, we denied Brown's motion to dismiss, concluding that the complaint sufficiently alleged improper behavior. We now look beyond the allegations to the evidence.

Arizona has adopted the definition of "improper" behavior from the *Restatement (Second) of Torts* § 766 (1979). *Wagenseller,* 147 Ariz. at 388, 710 P.2d at 1043. We look to (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests that were defeated, (4) the interests that the actor sought to advance, (5) the social interests involved, (6) the proximity of the actor's conduct to the interference, and (7) the relationship between the parties. *Id.* at 387, 710 P.2d 1025.

Among these *Wagenseller* factors, "the nature of the actor's conduct and the actor's motive" deserve the most weight. *Wells Fargo Bank,* 201 Ariz. at 494, 38

P.3d at 32. Furthermore, "conduct specifically in violation of statutory provisions or contrary to public policy may...make an interference improper." *Id.* However, we note that a reasonable, good faith belief in the legality of the conduct weighs against a finding of "improper" conduct. *See G.M. Ambulance and Medical Supply Co., Inc. v. Canyon State Ambulance, Inc.*, 153 Ariz. 549, 739 P.2d 203 (Ariz.Ct.App.1987).

■ Plaintiff argues that Brown violated Arizona Rule of Professional Conduct E.R. 1.15, which provides that a lawyer should segregate and hold disputed property, and file an interpleader where the dispute cannot be resolved amicably. E.R. 1.15(e). The language of the rule is fairly broad. However, the Rules of Professional Conduct are rules of reason, not to be literally construed to their logical extremes. Arizona Rules of Professional Conduct, Preamble, ¶ 14.

We conclude that E.R. 1.15 is not violated where the lawyer actually has a reasonable, good faith belief that the third party's claim is without substantial merit.[2] While the lawyer must "properly inform himself of the law" before acting, Ariz. Ethics Op. 98–06, distribution would not be unethical where the appropriate research indicates that the third party's claim is meritless. While any "good faith doubt" would implicate E.R. 1.15, a researched, reasonable and good faith belief in the propriety of disbursal is sufficient to render it permissible under the rule.

There is no genuine dispute that Brown had a good faith belief that Plaintiff's claims were without merit. There is no evidence that Brown had any "good faith doubt," or that he had any reason to have such doubts. Furthermore, there is no genuine dispute that Brown's beliefs were reasonable under the circumstances. He researched the issues and explained his conclusions to Plaintiff with citations to authority. He offered Plaintiff an opportunity to provide contrary authority. Plaintiff failed to do so.

At the time Brown distributed the proceeds, Plaintiff's only asserted claim was without merit. Plaintiff had asserted its claim under ERISA on a legal theory that had been rejected by the Supreme Court in *Knudson.* The potential state law claims were discovered only after the unfavorable decision in Florida. Had Plaintiff originally asserted its claims under a state law theory (not addressed by *Knudson*), the outcome might be different. However, Plaintiff did not raise the state law claims until well after Brown disbursed the funds.

Because Brown actually had a reasonable, good faith belief that Plaintiff's claims were without merit, it was not an ethical violation to disburse the settlement proceeds. Brown was under an obligation to his client and had his own legitimate interest in a portion of the settlement proceeds. He notified Plaintiff and took steps to assess the facts and the law of the case.

We conclude that Brown's good faith, reasonable conduct was not improper under the *Wagenseller* and *Wells Fargo* test.[3] We therefore deny Plaintiff's First Motion for Partial Summary Judgment and grant Brown's cross-motion.

---

2. Arizona Ethical Opinion 98–06 notes, "Our previous opinions have intimated an **actual knowledge standard**...if, in the circumstances (including the factual background and the attorney's assessment of the applicable law), the attorney is satisfied that either the client or the health care provider is entitled to receive the funds, the attorney should pay the funds accordingly." Ariz. Ethics. Op. 98–06, available at http://www.azbar.org/EthicsOpinions/ (internal citations omitted) (emphasis added).

3. Because we conclude that Plaintiff's actions did not violate E.R. 1.15, we need not address the question whether such a violation would be *per se* "improper" under *Wagenseller* or *Wells Fargo Bank.*

### III. Contract and Promissory Estoppel

During the negotiations between Gear and GMAC, Plaintiff's agent, Linda Brooks ("Brooks"), sent a letter to GMAC asserting its right to any recovery Gear might receive. None of the parties provided a copy of that letter or any testimony regarding its contents.

On January 24, Brooks wrote a second letter to GMAC, stating that Plaintiff's asserted lien had increased. The entire text of the letter reads:

> This will supplement my previous letter regarding the above captioned subrogation claim.
>
> Please note the lien amount has increased to $135103.90. Enclosed is documentation of the increased amount.
>
> Please send your acknowledgment of this notice at your earliest possible convenience. Thank you for your cooperation.

Plaintiff's Statement of Facts, Exhibit 2.

On the same day, GMAC employee Delores Tapp ("Tapp") answered Plaintiff's letter, stating, "Our policy would be to protect any and all liens. We will protect your lien. Should you waive your lien please provide us with a letter of same." *Id.* There is no other evidence of discussions between GMAC and Plaintiff.

On February 28, 2003, Brown forwarded a Ninth Circuit decision following *Knudson* to GMAC, in support of his position that Plaintiff had no claim to the settlement funds. On March 13, 2003, GMAC disbursed the $105,000 to Brown.

Plaintiff provides the affidavit of Joanne Crowley ("Crowley"). Crowley testifies

that she is "employed by" Plaintiff and "has personal knowledge of the facts set forth herein." Plaintiff's SOF, Exhibit 1 at 1. She neither identifies her position nor shows how she acquired knowledge of the facts. She does testify that "in consideration of GMAC's agreement, [Plaintiff] did not file a lawsuit to enforce its rights against GMAC." *Id.* at 2. She also testifies that "had GMAC abided by its agreement, Gear's counsel would have been required either to pay [Plaintiff] or interplead the disputed funds into court." *Id.*

### A. The Contract Claim

■ Plaintiff contends that the January 24, 2003, letters between GMAC and Plaintiff created a contract. We disagree. Tapp's explanation of GMAC's policy was neither an offer nor an acceptance. Furthermore, any purported contract fails for lack of consideration.

Brooks' letter simply states that "the lien amount has increased...Please send your acknowledgment of this notice." Brooks did not "offer" anything to GMAC. Nor did she make any requests of GMAC.

Moreover, even if the January 24 correspondence reflected an acceptance and a promise by GMAC, the purported contract would be unenforceable for want of consideration. Plaintiff made no promises to GMAC; it offered nothing to GMAC at all.

That Plaintiff did not sue GMAC is insufficient. Plaintiff must demonstrate that it promised to refrain from litigation *in exchange* for GMAC's promise to respect the lien. At a bare minimum, this promise must have been conveyed to GMAC in order to constitute consideration. It was not.[4] For this reason alone, the alleged contract fails for lack of consideration.

---

4. Plaintiff's own brief demonstrates the insufficiency of consideration. Plaintiff contends that "consideration for the contract was manifested by the Plan's forbearance of...litigation." Plaintiff itself does not argue that

Plaintiff *promised* to forego litigation or even communicated an intent to forego litigation. Rather, Plaintiff simply states that it did not sue, and that this "manifests" consideration.

But there is more. At the time of Plaintiff's purported "offer," Plaintiff had no claims against GMAC that it could refrain from litigating. Plaintiff's only asserted claims against GMAC arise from GMAC's response to Plaintiff's letter. Plaintiff's letter preceded these statements. Plaintiff cannot have offered to refrain from suing GMAC for statements GMAC had not yet made. Thus, even had Plaintiff actually made an offer to GMAC, it included only illusory consideration.

There are no genuine issues of material fact regarding Plaintiff's breach of contract claim. When GMAC filed its Cross–Motion for Summary Judgment, Plaintiff was obligated to point to some evidence creating a genuine dispute. But there is no evidence to support the existence of a contract. We therefore deny Plaintiff's First Motion for Partial Summary Judgment, and grant GMAC's Cross–Motion for Summary Judgment on the breach of contract claim.

### B. Promissory Estoppel

Plaintiff contends that, even if there was no contract, GMAC's "promises" to respect Plaintiff's lien gave rise to promissory estoppel. Plaintiff filed its Second Motion for Partial Summary Judgment on this issue, and GMAC filed its Second Cross–Motion in response.

■■ Arizona has adopted the *Restatement (Second) of Contracts* (1981) formulation of promissory estoppel. *Chewning v. Palmer*, 133 Ariz. 136, 650 P.2d 438 (Ariz. 1982). To prevail under this theory, Plaintiff must establish that (1) GMAC made a promise that GMAC reasonably should have expected Plaintiff to rely upon (2) Plaintiff relied on the promise (3) to its substantial detriment and (4) injustice can be avoided only by enforcement of the promise. *Id. See also, Weiner v. Romley,* 94 Ariz. 40, 381 P.2d 581 (Ariz.1963);

*Waugh v. Lennard,* 69 Ariz. 214, 211 P.2d 806 (Ariz.1949).

GMAC stated, "Our policy would be to protect any and all liens. We will protect your lien." Given the lack of evidence regarding the context in which this statement was made, it is difficult to determine whether this was a promise or merely an expression of intent or declaration of policy. The parties have not substantially briefed the difference between "promises" and other statements. In view of this uncertainty, and because we decide the parties' motions on other grounds, we need not decide whether GMAC's statement amounted to a "promise."

Plaintiff's evidence regarding reliance is Crowley's ambiguous testimony that "in consideration of GMAC's agreement, [Plaintiff] did not file a lawsuit to enforce its rights against GMAC." Plaintiff's SOF, Exhibit 1 at 2. We conclude that there is a genuine issue whether this ambiguous and legalistic statement demonstrates that Plaintiff relied upon GMAC's statement.

Plaintiff's only argument that it suffered "substantial detriment" is that it "did not file a lawsuit to enforce its rights against GMAC." However, Plaintiff did in fact file a lawsuit—this lawsuit—against GMAC. Furthermore, Plaintiff filed a lawsuit against Brown and Gear on the same day that GMAC disbursed the funds.

■■ Plaintiff has failed to explain how it has been prejudiced. Under Arizona law, the prejudice necessary for estoppel must be substantial; the injury must be real and not technical or formal in nature. *Weiner,* 94 Ariz. at 44, 381 P.2d at 583; *Leal v. Allstate Insurance Company,* 199 Ariz. 250, 254, 17 P.3d 95, 99 (Ariz.Ct.App. 2000).

There is no evidence that, without GMAC's putative promise, Plaintiff would have filed an action against GMAC. There

is no evidence that, without the putative promise, Plaintiff would have filed its action against Brown and Gear any earlier. In fact, there is no evidence that, without the "promise," Plaintiff would have done *anything* differently.

■ While any legal detriment can suffice as consideration for a contract, promissory estoppel is different. Some actual prejudice must be shown. There is no evidence of such an injury here. Because we conclude that there is no genuine issue about the "substantial detriment" element of the claim, we grant GMAC's Second Cross–Motion for Summary Judgment on this issue.

The "injustice" element of a promissory estoppel claim is closely connected to the "substantial detriment" claim. We fail to see how injustice can result where Plaintiff has suffered no harm. Accordingly, we conclude that there is no evidence that "injustice can be avoided only by enforcement of the promise." We therefore grant GMAC's Second Cross–Motion for Summary Judgment.

### IV. Conclusion

We deny Plaintiff's First Motion for Partial Summary Judgment. We grant Brown's Cross–Motion for Summary Judgment because no reasonable jury could find that Brown's actions were "improper" interference under Arizona law. Because we grant Brown's cross-motion on the intentional interference claim, we also grant his motion for summary judgment on punitive damages.

We grant GMAC's First and Second Cross–Motions for Summary Judgment. We grant GMAC's First Cross–Motion because there are no genuine issues of material fact regarding offer, acceptance, and mutual consideration on Plaintiff's alleged contract. We grant GMAC's Second Cross–Motion because there are no genuine issues of material fact regarding the "substantial detriment" and "injustice" elements of Plaintiff's promissory estoppel claim.

**IT IS ORDERED DENYING** Plaintiff's First Motion for Partial Summary Judgment (doc. 23) and DENYING Plaintiff's Second Motion for Partial Summary Judgment (doc. 45).

**IT IS ORDERED DENYING AS MOOT** Brown's Motion for Rule 56(f) Relief (doc. 34–1).

**IT IS ORDERED GRANTING** Brown's Cross–Motion for Summary Judgment (doc. 34–2), **GRANTING** GMAC's Cross–Motion for Summary Judgment (doc. 31) and **GRANTING** GMAC's Second Cross–Motion for Summary Judgment (doc. 66).