114 P.3d 835

**DOUBLE AA BUILDERS, LTD., an Arizona corporation, Plaintiff–Appellee, Cross Appellant,**

v.

**GRAND STATE CONSTRUCTION L.L.C., an Arizona corporation, Defendant–Appellant, Cross Appellee.**

**No. 1 CA–CV 03–0609.**

Court of Appeals of Arizona, Division 1, Department E.

June 28, 2005.

Holden Brodman, PLC By Michael J. Holden, Phoenix, Attorneys for Plaintiff–Appellee, Cross Appellant.

Law Office of Lyndon B. Steimel By Lyndon B. Steimel, Scottsdale, Attorneys for Defendant–Appellant, Cross Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 Grand State Construction L.L.C., a subcontractor, appeals a judgment awarding damages to Double AA Builders, Ltd., a general contractor, on a promissory estoppel claim. Double AA cross-appeals the trial court's denial of attorneys' fees under Arizona Revised Statutes ("A.R.S.") section 12–341.01(A) (2003). We affirm the judgment in favor of the general contractor because the evidence is sufficient to support the trial court's implied findings of each element of promissory estoppel. We also conclude that § 12–341.01(A) is not applicable to a promise made enforceable by the doctrine of promissory estoppel and we therefore affirm the trial court's denial of attorneys' fees to the general contractor.

## I.

¶ 2 In anticipation of submitting a bid for the construction of a Home Depot Store in Mesa, Double AA ("General Contractor") solicited bids from subcontractors for various portions of the work.

¶ 3 On December 18, 2001, Grand State ("Subcontractor") faxed a written but unsigned bid to General Contractor in the amount of $115,000 for installation of the Exterior Insulation Finish System ("EIFS") on the project. Subcontractor's proposal stated: "Our price is good for 30 days." General Contractor also received other bids from subcontractors for the EIFS work.

¶ 4 General Contractor relied upon several subcontractor bids, including Subcontractor's, in preparing its overall price for the project. Specifically, General Contractor used Subcontractor's price of $115,000 for the EIFS portion of the work in arriving at the total bid submitted to the owner.

¶ 5 On December 21, 2001, Home Depot advised General Contractor that General Contractor was the successful bidder for the project. On December 31, 2001, Home Depot forwarded a contract to General Contractor for the project.

¶ 6 On January 11, 2002, within the 30–day "price is good" period, General Contractor sent a subcontract for the EIFS work to Subcontractor to be signed and returned. Subcontractor advised General Contractor that it would not sign the subcontract or perform on the project. A letter from Subcontractor to General Contractor explained: "Upon reviewing your schedule for this upcoming project and our own inventory of presently scheduled work, we will not be able to enter into a contract with your company. From the time we received a contract from your office we signed four other contracts that were bid around the same time period."

¶ 7 General Contractor subsequently entered into a subcontract with a replacement subcontractor to install the EIFS at a cost of $131,449, which exceeded Subcontractor's quoted price by $16,449. General Contractor demanded that Subcontractor pay the difference between its bid and General Contractor's ultimate cost to perform the same work. After Subcontractor refused, General Contractor filed suit based upon promissory estoppel.

¶ 8 In accordance with superior court rules, an arbitrator initially heard the case. The arbitrator ruled in favor of Subcontractor. General Contractor appealed, seeking a trial *de novo* in superior court. After a one-day bench trial, the court ruled in favor of General Contractor and awarded $16,449 in damages but denied General Contractor's request for attorneys' fees. This appeal and cross-appeal followed.

## II.

¶ 9 Because this case was tried to the court, we view the evidence in the light most favorable to upholding the trial court's decision. *See Federoff v. Pioneer Title & Trust Co.*, 166 Ariz. 383, 388, 803 P.2d 104, 109 (1990). Neither side requested that the court make specific findings of fact and conclusions of law pursuant to Arizona Rule of Civil Procedure 52(a), and the court did not, *sua sponte*, make detailed findings. Under these circumstances, we must presume that the trial court found every fact necessary to support its judgment and we will affirm if any reasonable construction of the evidence justifies it. *See Garden Lakes Comty. Ass'n, Inc. v. Madigan*, 204 Ariz. 238, 240, ¶ 9, 62 P.3d 983, 985 (App.2003); *In re CVR 1997 Irrevocable Trust*, 202 Ariz. 174, 177, ¶ 16, 42 P.3d 605, 608 (App.2002).

¶ 10 We apply a *de novo* standard when reviewing issues of law and statutory interpretation. *See Jangula v. Ariz. Prop. and Cas. Ins. Guar. Fund*, 207 Ariz. 468, 470, ¶ 12, 88 P.3d 182, 184 (App.2004); *Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 500, ¶ 24, 88 P.3d 565, 570 (App.2004).

## III.

¶ 11 We first address Subcontractor's position that the doctrine of promissory estoppel should not be applied in the context of subcontractors submitting bids to general contractors.

¶ 12 When a general contractor prepares an overall bid for a competitively-bid construction project, it receives bids and quotes from subcontractors for portions of the work. The general contractor uses the bids in preparing its overall price for the project. A subcontractor's refusal to honor its bid can be financially disastrous for the general contractor, because it will typically be bound by the bid price submitted to the owner.

¶ 13 Arizona has previously adopted Section 90(1) of the Restatement (Second) of Contracts (1981), *see Chewning v. Palmer*, 133 Ariz. 136, 138, 650 P.2d 438, 440 (1982), which describes those promises that will be binding under the promissory estoppel doctrine:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

¶ 14 This doctrine "has been used to require the subcontractor to perform according to the terms of its bid to the contractor if the contractor receives the contract award, since the contractor has relied on the subcontractor's bid and must perform for a price based on that reliance." Thomas C. Horne, *Arizona Construction Law* § 202, at 97 (2d ed.1994).

¶ 15 The leading case applying promissory estoppel in this context is *Drennan v. Star Paving Co.*, 51 Cal.2d 409, 333 P.2d 757 (1958). The *Drennan* general contractor was preparing a bid for a public school job. *Id.* at 758. Before submitting the bid, the general contractor received a telephoned bid from a subcontractor of $7,131.60 for paving work. *Id.* One day later, the subcontractor informed the general contractor that the bid contained a mistake and that it would not perform the work for less than $15,000. *Id.* at 758–59. The general contractor, however, had already included the subcontractor's bid in its price, and the owner had accepted the general contractor's bid. *Id.* at 759.

¶ 16 Eventually, the general contractor retained another subcontractor to perform the paving work at a cost of $10,948.60. *Id.* The California Supreme Court ruled that the general contractor was entitled to a judgment against the subcontractor for $3,817, the difference between the subcontractor's bid and the general contractor's cost to perform the same scope of work. *Id.* at 759, 761. The court explained:

When [general contractor] used [subcontractor]'s offer in computing his own bid, he bound himself to perform in reliance on [subcontractor]'s terms. Though [subcontractor] did not bargain for this use of its bid neither did [subcontractor] make it idly, indifferent to whether it would be used or not. On the contrary it is reason-

able to suppose that [subcontractor] submitted its bid to obtain the subcontract. It was bound to realize the substantial possibility that its bid would be the lowest, and that it would be included by [general contractor] in his bid. It was to its own interest that the contractor be awarded the general contract; the lower the subcontract bid, the lower the general contractor's bid was likely to be and the greater its chance of acceptance and hence the greater [subcontractor]'s chance of getting the paving subcontract. [Subcontractor] had reason not only to expect [general contractor] to rely on its bid but to want him to. Clearly [subcontractor] had a stake in [general contractor]'s reliance on its bid. Given this interest and the fact that [the general contractor] is bound by his own bid, it is only fair that [general contractor] should have at least an opportunity to accept [subcontractor]'s bid after the general contract has been awarded to him.

*Id.* at 760; *accord Alaska Bussell Elec. Co. v. Vern Hickel Constr. Co.,* 688 P.2d 576, 579–80 (Alaska 1984); *C.H. Leavell & Co. v. Grafe & Assocs., Inc.,* 90 Idaho 502, 414 P.2d 873, 878 (1966); *Pavel Enters., Inc. v. A.S. Johnson Co. Inc.,* 342 Md. 143, 674 A.2d 521, 526 (1996); *Loranger Constr. Corp. v. E.F. Hauserman Co.,* 6 Mass.App.Ct. 152, 374 N.E.2d 306, 309–10 (1978); *Constructors Supply Co. v. Bostrom Sheet Metal Works, Inc.,* 291 Minn. 113, 190 N.W.2d 71, 75–76 (1971); *E.A. Coronis Assocs. v. M. Gordon Constr. Co.,* 90 N.J.Super. 69, 216 A.2d 246, 251 (Ct.App.Div. 1966).

¶ 17 Arizona has long recognized and applied the promissory estoppel doctrine. *See Weiner v. Romley,* 94 Ariz. 40, 43, 381 P.2d 581, 584 (1963); *Waugh v. Lennard,* 69 Ariz. 214, 223–24, 211 P.2d 806, 812 (1949); *Higginbottom v. State,* 203 Ariz. 139, 144, ¶ 18, 51 P.3d 972, 977 (App.2002). Furthermore, this court in *Tiffany Inc. v. W.M.K. Transit Mix, Inc.,* 16 Ariz.App. 415, 493 P.2d 1220 (1972), determined that the doctrine of promissory estoppel was applicable in a dispute involving a highway contractor and a sealcoat chip supplier, but barred recovery based on the statute of frauds. Before addressing the statute of frauds defense, the court explained why promissory estoppel would otherwise be applicable:

> In analyzing promissory estoppel in relation to the facts of this case viewed in the light most favorable to plaintiff, the party opposing the motion for summary judgment, we find that the elements of this theory are met. In viewing the facts in favor of plaintiff, the record shows that defendant promised to supply class C sealcoat chips at a price of $3.50 per ton. *Plaintiff relied to his detriment on this promise in that it subsequently used the quote to secure its successful bid from the Highway Department. Further, the defendant should reasonably have foreseen that plaintiff would rely on the quote and use it in its bid, if the quote were the lowest.* In a case involving a similar set of facts, the California Supreme Court in *Drennan v. Star Paving Company* also reached the conclusion that this was a proper case for promissory estoppel.

16 Ariz.App. at 420, 493 P.2d at 1225 (emphasis added) (citation omitted).

¶ 18 Subcontractor has set forth no persuasive reason not to apply the doctrine of promissory estoppel in the context of subcontractor bids to general contractors. We hold, therefore, that promissory estoppel may be applied in this context if the required elements are proven.

¶ 19 To prove promissory estoppel, a general contractor must show that the subcontractor made a promise and should have reasonably foreseen that the general contractor would rely on that promise and further that the general contractor did in fact rely on that promise. *See* Restatement (Second) of Contracts § 90(1); *Drennan,* 333 P.2d at 760; *see also Higginbottom,* 203 Ariz. at 144, ¶ 18, 51 P.3d at 977 (stating elements of promissory estoppel in different context). The general contractor must also show that he had a "justifiable right to rely" on the promise. *See Higginbottom,* 203 Ariz. at 144, ¶ 18, 51 P.3d at 977. If these elements are proven, the promise "is binding if injustice can be avoided only by enforcement of the promise." Restatement (Second) of Contracts § 90(1).

¶ 20 Subcontractor submitted a bid stating "[o]ur price is good for 30 days." This statement constituted a promise to perform at the stated price. Subcontractor admitted that it realized that if its bid was the lowest, General Contractor might rely on the bid in preparing its overall project price. General Contractor did in fact rely on this bid by incorporating it into its own proposal. Reviewing the evidence in the light most favorable to upholding the decision, we find that substantial evidence in the record supports the trial court's application of promissory estoppel to allow General Contractor to recover damages for Subcontractor's refusal to perform on its bid.

¶ 21 Subcontractor advances four specific arguments why the promissory estoppel doctrine should not be applied in this particular case: Subcontractor's bid was not a promise; General Contractor did not accept Subcontractor's bid in a timely manner; the statute of frauds precludes enforcement of Subcontractor's bid; and General Contractor failed to prove its damages with certainty. We address each of these arguments in turn.

### A.

¶ 22 Subcontractor contends that its bid was not a promise, but rather an expression of intent or desire to perform the work. This claim is belied by the content of its communication. The faxed quotation included the job name, the scope of work, Subcontractor's price, and certain additional terms, including payment every thirty days. The quote also stated that the price "is good for 30 days." Moreover, Subcontractor's general manager acknowledged at trial that the reason Subcontractor submitted the bid was for Subcontractor to obtain the work covered by its bid if General Contractor were the successful bidder. The quote therefore constitutes an unequivocal commitment to perform certain work at a certain price.

¶ 23 Similar statements have been found to be promises. In *Tiffany,* for example, we explained that a representation that a party would supply class C sealcoat chips at a certain price if the plaintiff was awarded a highway contract constituted a promise. 16 Ariz.App. at 420, 493 P.2d at 1225. Similar-

ly, the *Drennan* court found that the bid "constituted a promise to perform on such conditions as were stated expressly or by implication therein or annexed thereto by operation of law." 333 P.2d at 759.

¶ 24 Subcontractor contends that two Arizona cases defeat these arguments, but its reliance on these authorities is misplaced. In *School District No. 69 of Maricopa County v. Altherr,* 10 Ariz.App. 333, 458 P.2d 537 (1969), *disapproved in part on other grounds by Board of Trustees of Marana Elementary School, District No. 6 v. Wildermuth,* 16 Ariz.App. 171, 173, 492 P.2d 420, 422 (1972), the court held that no promise existed because the school district's board of trustees merely expressed their "intent" or "desire" to buy the school building. *Id.* at 340, 458 P.2d at 544. In contrast, Subcontractor proposed to perform a definite scope of work for a specific price.

¶ 25 The second case, *Johnson International, Inc. v. City of Phoenix,* 192 Ariz. 466, 967 P.2d 607 (App.1998), is also distinguishable. The court refused to enforce a memorandum of understanding of the parties' intentions regarding a potential development agreement that included the following language: "This memorandum is not intended to be the final agreement or to include all of the material terms, which shall be subject to further negotiations, and it shall not be binding on either party." *Id.* at 468, ¶ 5, 967 P.2d at 609. The court held that the memorandum could not, by itself, be a promise because its clear language precluded that interpretation. *Id.* at 474, ¶ 51, 967 P.2d at 615. In contrast, Subcontractor's bid contained no such limitations.

¶ 26 The evidence at trial was sufficient to support the trial court's implied finding that Subcontractor's bid constituted a promise that could be enforced on the basis of promissory estoppel.

### B.

¶ 27 Subcontractor also attempts to justify its refusal to perform on its bid by claiming that General Contractor failed to accept the bid promptly. The record, however, supports the implied finding of the court

that General Contractor accepted the bid within a reasonable period of time in accordance with the terms of Subcontractor's proposal.

¶ 28 Subcontractor faxed its bid on December 18, 2001, and the bid stated that it was "good for 30 days." General Contractor mailed a subcontract to Subcontractor on January 11, 2002, twenty-four days later. Acceptance is generally complete upon mailing, unless the proposal stipulates that acceptance is not effective until received. *See generally Cohen v. First Nat'l Bank,* 22 Ariz. 394, 400, 198 P. 122, 124 (1921) (in a banking context, applying the rule that acceptance is generally complete upon mailing). Subcontractor placed no limitations on General Contractor's method of acceptance. Therefore, General Contractor accepted when it mailed the subcontract on the twenty-fourth day of the thirty-day period specified in Subcontractor's proposal.

¶ 29 Subcontractor contends that the leading case of *Drennan* does not support the application of promissory estoppel in this case because the general contractor in *Drennan* contacted the subcontractor one day after the latter submitted its bid. But *Drennan* does not establish an outer limit of time for acceptance of a bid nor does it curtail the ability of a bidder to define the time period for acceptance of its proposal. As the *Drennan* court explained, "Had defendant's bid expressly stated or clearly implied that it was revocable at any time before acceptance we would treat it accordingly." 333 P.2d at 759. Here, General Contractor accepted within a reasonable period of time because the acceptance was within the thirty-day commitment of Subcontractor.

¶ 30 Subcontractor also contends that enforcement of subcontract bids not immediately accepted will chill the bidding process. However, enforcing bids under the promissory estoppel doctrine may in fact enhance the effective functioning of the construction industry. As the Alaska Supreme Court explained: "[I]f a contractor is set to deliver a set price to an owner, these [subcontractor] bids must be binding for a reasonable time. This operates to the benefit of the construction industry. Promissory estoppel, as ap-

plied in *Drennan* and adopted by this court, is a necessary element of this scheme." *Alaska Bussell,* 688 P.2d at 580.

## C.

■ ¶ 31 Subcontractor further argues that General Contractor's claim is barred by the statute of frauds because the subcontract involved the sale of goods in excess of $500 and the faxed bid was not signed. The pertinent portions of A.R.S. § 44–101(4) (2003) provide:

> No action shall be brought in any court in the following cases unless the promise or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:
>
> 4. Upon a contract to sell or a sale of goods ... of the value of five hundred dollars or more....

Because we resolve this issue on the basis of whether the proposed subcontract involved the sale of goods within the meaning of the statute of frauds, we need not decide if the statute of frauds applies to promises made enforceable by promissory estoppel, nor do we address whether the faxed bid on Subcontractor's letterhead satisfied the requirements of the statute even though it was unsigned.

¶ 32 General Contractor contends that the contemplated subcontract for the application of the EIFS was predominantly for services rather than for the sale of goods. The insulation material may constitute "goods" but the activity of installing the material constitutes services. We are presented, therefore, with the question whether the statute of frauds applies to a subcontract that contemplates the supplying of both goods and services.

¶ 33 This appears to be an issue of first impression in Arizona but numerous courts in other jurisdictions have addressed whether similar promises or agreements are subject to a statute of frauds or the Uniform Commercial Code pertaining to the sale of goods. If the transaction at issue includes both goods and services, most courts seek to

determine whether the predominant aspect and purpose of the contract is the sale of goods or the providing of services. *See Bonebrake v. Cox,* 499 F.2d 951, 960 (8th Cir. 1974) (considering whether transaction was within Article 2 of the Uniform Commercial Code and holding that "[t]he test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom)"); *Yorke v. B.F. Goodrich Co.,* 130 Ill.App.3d 220, 85 Ill.Dec. 606, 474 N.E.2d 20, 22 (1985) (applying the dominant purpose test to determine whether contracts are for the sale of goods or services when both are plainly involved); *Care Display, Inc. v. Didde–Glaser, Inc.,* 225 Kan. 232, 589 P.2d 599, 605 (1979) (citing *Bonebrake* ); *Integrity Material Handling Sys., Inc. v. Deluxe Corp.,* 317 N.J.Super. 406, 722 A.2d 552, 555 (Ct.App.Div.1999) ("When a contract is a mixed contract for goods and services, a court must determine whether the sales or services aspect predominates."); *Allied Indus. Serv. Corp. v. Kasle Iron & Metals, Inc.,* 62 Ohio App.2d 144, 405 N.E.2d 307, 309–10 (Ct.App.1977) (stating that if contract involves both goods and services, the predominant factor and purpose determines whether sales statutes apply); *Cont'l Casing Corp. v. Siderca Corp.,* 38 S.W.3d 782, 787–88 (Tex.App.2001) ("[T]o determine whether the UCC statute of frauds applies in this case, we must decide whether the dominant factor or essence of this alleged agreement is a 'contract for the sale of goods.' ").

■■ ¶ 34 Determining the predominant purpose of the contemplated contract is often a question of fact. *Akrosil Div. of Int'l Paper Co. v. Ritrama Duramark, Inc.,* 847 F.Supp. 623, 627 (E.D.Wis.1994). The de-

fense of the statute of frauds is an affirmative defense for which Subcontractor had the burden of proof. *See Lakin Cattle Co. v. Engelthaler,* 101 Ariz. 282, 284, 419 P.2d 66, 68 (1966); Ariz. R. Civ. P. 8(c).

¶ 35 In this case, the court was not requested to and did not make specific findings and conclusions regarding the statute of frauds defense asserted by Subcontractor. We must presume that the trial court either decided as a matter of law that this contemplated contract was not subject to the statute of frauds or made the necessary findings of fact to support the conclusion that the service aspect of the contract predominated over the sale of goods aspect. *See Garden Lakes,* 204 Ariz. at 240, ¶ 9, 62 P.3d at 985.

¶ 36 Sufficient evidence exists in this case for the trial court to have determined that the EIFS subcontract fell outside of the statute of frauds. Subcontractor's bid included both labor and materials. Subcontractor was required to be licensed by the Arizona Registrar of Contractors in order to perform this work. *See* A.R.S. § 32–1151 (2002). Finally, Subcontractor's reason for refusing to perform the obligation was that it could not adequately staff the job, which further confirms that its bid involved the sale of services.

¶ 37 Subcontractor further contends that the statute of frauds prevents application of the promissory estoppel doctrine, citing *Tiffany,* 16 Ariz.App. 415, 493 P.2d 1220. We disagree. The promise at issue in *Tiffany* was for sale of sealcoat chips, with no installation or services involved. *Id.* at 417, 493 P.2d at 1222. Because the court found that the chips were goods and the statute of frauds applied, it declined to apply the doctrine of promissory estoppel. *Id.* at 421, 493 P.2d at 1226.[1]

¶ 38 Subcontractor cites two additional cases that are distinguishable. In *21 Turtle Creek Square, Ltd. v. New York State Teachers' Retirement System,* 425 F.2d 1366 (5th

---

1. After this court decided *Tiffany,* the Second Restatement of Contracts adopted the rule that promissory estoppel may apply even in the face of a valid statute of frauds defense. Restatement (Second) of Contracts § 139(1) (1981). In light of our resolution of the statute of frauds issue presented here, we need not reach the issue whether promissory estoppel would apply even if the statute of frauds was applicable nor do we need to reconsider the *Tiffany* decision at this time.

Cir.1970), *modified*, 432 F.2d 64 (5th Cir. 1970), the court found that the statute of frauds applied and was violated because the promise concerned an increase of a mortgage loan and could not be performed in one year. *See* 425 F.2d at 1371. Similarly, *Alaska Airlines, Inc. v. Stephenson*, 217 F.2d 295 (9th Cir.1954) concerned an employment contract that could not be performed within one year. *Id.* at 296.

¶ 39 The trial court correctly decided that the statute of frauds did not apply as a defense to General Contractor's claim.

### D.

■ ¶ 40 Subcontractor also challenges the award of damages on the ground that General Contractor failed to prove "with certainty" that it actually sustained damages in the amount awarded. The record, however, contains evidence sufficient to support the award. A vice president of General Contractor testified that General Contractor contracted with the replacement subcontractor for $131,449, which was $16,449 more than Subcontractor's quote.

■ ¶ 41 Although Subcontractor claims that there was inconsistent evidence regarding these damages, the trial court's conclusion was a reasonable construction of the evidence. Our duty on review does not include re-weighing conflicting evidence or re-determining the preponderance of the evidence. *See In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13, 975 P.2d 704, 709 (1999) (upholding the trial court's intent finding because it was supported by substantial evidence, even though conflicting evidence existed). We must give due regard to the trial court's opportunity to judge the credibility of the witnesses. Even though conflicting evidence may exist, we affirm the trial court's ruling because substantial evidence supports it. *See id.* at 580, ¶ 18, 975 P.2d at 710.

¶ 42 For these reasons, we affirm the trial court's award of compensatory damages to General Contractor based on promissory estoppel.

### IV.

■ ¶ 43 General Contractor cross-appeals the trial court's denial of attorneys' fees, arguing that A.R.S. § 12–341.01(A) allows an award of fees in conjunction with a promise made enforceable by promissory estoppel. Subcontractor contends that § 12–341.01(A) is not applicable to a promissory estoppel claim.[2] The application of § 12–341.01(A) to this claim is a question of statutory interpretation that we review *de novo*. *See Jangula*, 207 Ariz. at 470, ¶ 12, 88 P.3d at 184.

¶ 44 Section 12–341.01(A) applies to actions that arise out of "express or implied" contracts. For the following reasons, we hold that a recovery based on promissory estoppel does not arise out of an express or implied contract within the meaning of § 12–341.01(A).

■ ¶ 45 A promissory estoppel claim is not the same as a contract claim. Promissory estoppel provides an equitable remedy and is not a theory of contract liability. *See Chewning*, 133 Ariz. at 138, 650 P.2d at 440 (distinguishing "equitable remedy under the theory of promissory estoppel" from breach of contract); *State ex rel. Romley v. Gaines*, 205 Ariz. 138, 143, ¶ 15, 67 P.3d 734, 739 (App.2003) (stating that promissory estoppel is not a theory of contract recovery); *Johnson Int'l, Inc. v. City of Phoenix*, 192 Ariz. 466, 474, ¶ 49, 967 P.2d 607, 615 (App.1998) (same). Although a promise made enforceable by promissory estoppel is similar to a binding contractual promise, a promissory estoppel claim does not arise out of a contract. *See Johnson Int'l, Inc.*, 192 Ariz. at 474, ¶ 49, 967 P.2d at 615; *see also Kersten v. Cont'l Bank*, 129 Ariz. 44, 47, 628 P.2d 592,

---

**2.** The trial court provided no reason for denying the requested fees. Subcontractor's primary argument to the trial court was that § 12–341.01(A) did not, as a matter of law, support awarding fees in promissory estoppel cases. Alternatively, Subcontractor argued that the court should award a lesser amount of fees than General Contractor had requested. The record contains no argument that, assuming § 12–341.01(A) is applicable, the trial court should exercise its discretion to award no fees. Under these circumstances, we will address the legal question whether fees may be awarded under § 12–341.01(A) on a promissory estoppel theory.

595 (App.1981) (stating that promissory estoppel may afford relief if "some element necessary to the creation of an enforceable contract, such as consideration, is not present").

¶ 46 Some authorities hold that a promise made enforceable by promissory estoppel constitutes an implied-in-law contract. *See Sam Gray Enters., Inc. v. United States,* 43 Fed. Cl. 596, 605 (Fed.Cl.1999) (holding that promissory estoppel creates implied-in-law, as opposed to implied-in-fact, contract); *Schwartz v. United States,* 16 Cl.Ct. 182, 185 (Cl.Ct.1989) (explaining that promissory estoppel operates in an equitable sense to bind the promisor to an implied-in-law contract); *Jablon v. United States,* 657 F.2d 1064, 1070 (9th Cir.1981) (stating that promissory estoppel theory is not an "express or implied-in-fact contract" theory); *Del Hayes & Sons, Inc. v. Mitchell,* 304 Minn. 275, 230 N.W.2d 588, 593 (1975) ("Promissory estoppel is the name applied to a contract implied in law where no contract exists in fact.")

¶ 47 Even if we consider General Contractor's recovery to be based on an implied-in-law contract, A.R.S. § 12–341.01(A) would not be applicable. In *Barmat v. John and Jane Doe Partners A–D,* 155 Ariz. 519, 747 P.2d 1218 (1987), our supreme court held that attorneys' fees could be awarded under § 12–341.01(A) for claims arising out of express and implied-in-fact contracts but not for claims arising out of implied-in-law contracts. *Id.* at 523, 747 P.2d at 1222.

¶ 48 General Contractor cites no authority holding that promissory estoppel creates an implied-in-fact contract. And, as already noted, the doctrine applies to allow a promise to be enforced in certain instances even though no actual contract exists. *See supra* ¶ 45. We conclude, therefore, that even if a promise made enforceable by promissory estoppel could be considered a contractual obligation, it is based on a contract implied in law, not a contract implied in fact. Under *Barmat,* recoveries based on implied-in-law contracts do not qualify for awards of attorneys' fees under § 12–341.01(A). 155 Ariz. at 523, 747 P.2d at 1222.

**V.**

¶ 49 We affirm the judgment awarding damages to General Contractor based on the doctrine of promissory estoppel. We also affirm the trial court's denial of attorneys' fees to General Contractor, and for the same reasons we deny General Contractor's request for an award of attorneys' fees on appeal.

CONCURRING: DANIEL A. BARKER, Presiding Judge and PATRICIA K. NORRIS, Judge.